[Crim. No. 2843.   First Dist., Div. Two.   Feb. 27, 1953.]

THE PEOPLE, Respondent, v. MARTIN JOSEPH REIM-
RINGER et al., Appellants.

Jay Graves, Robert H. Kroninger and William T. Belcher, Jr., for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Wallace G. Colthurst, Deputy Attorney General, Francis W. Collins, District Attorney, and Thomas F. McBride, Assistant District Attorney, for Respondent.

NOURSE, P. J.—Defendants, tried together, were found guilty by a jury on four counts of abortion and one count of conspiracy. They appeal, represented by different counsel and filing separate briefs. Their attitudes have been different during all of the case. Both pleaded not guilty, but Raegan, in whose house the abortions took place, and who was contact man and assistant had admitted his part in a number of abortions before trial. Reimringer, a physician who allegedly performed the operations, constantly denied all knowledge of them. He testified in his own behalf, whereas Raegan did not testify. Reimringer urges insufficiency of the evidence, Raegan does not.

In the evening of August 31, 1951, police officers saw suspicious circumstances at Raegan's house and took it under observation. They saw a car arrive and somebody enter the house and return after 18 minutes. He was followed and stopped and proved to be Dr. Reimringer. He said that he had been "out for a ride." He was brought back to the house where an aborted girl (Williamson) and instruments, etc., of the abortion were found. The girl recognized Reimringer and told the story, later testified to at the trial, of the contact of her and her friend with Raegan, who brought her to the house, the preparation of a kitchen for the abortion, the appearance of the surgeon in operation mask and skull cap, the operation without anesthesia in the darkened kitchen, Raegan holding a flashlight, the payment of $500 in $20 bills. Raegan admitted and corroborated the story of Williamson. A notebook was found in his pocket containing dates, names and telephone numbers. He admitted that they related to prior abortions, all said to have been performed by Reimringer. A transcript of the statement of Raegan, containing the admissions and the notebook, was introduced in evidence only as against Raegan.

In one of Raegan's pockets $300 in $20 bills was found, in one of Reimringer's pockets $200 in such bills. Reim-

ringer denied having been in the house or ever having seen the Williamson girl. Testifying at the trial he changed his position completely. He was the physician of Raegan's wife. On the evening of August 31st Raegan had called him because his wife was ill. He waited some time and stopped for a drink before going there, had a drink also at Raegan's, then Raegan asked him to examine Patricia Williamson, but he refused and when she became angry he left.

The abortion of Patricia Williamson constitutes the first count of the information, and the conspiracy to commit the abortion on her the fifth and last count. The second count relates to the abortion of Marilyn Lohmann on July 6, 1951, the third of Sharon Gallaher on August 9, 1951, and the fourth of Louise Carre on July 18, 1951. The facts and evidence in each of these three counts correspond with those of the first count except that all corroboration by observation of police officers is missing—the same place, the same transportation and the same preparation and assistance by Reagan and treatment by an unnamed physician wearing an operation mask. In each case the escort of the woman (husband or boy friend) could corroborate the contact with and transportation by Raegan, but the escort had no contact with Dr. Reimringer. Dr. Reimringer was identified in all cases by the patient, but during the treatment she had seen him only when wearing the operation mask and there were strong discrepancies in their descriptions of his complexion and eyes. As to all counts defendant Reimringer produced some alibi evidence over and above his own testimony.

■ Appellant Reimringer contends that the trial court was without jurisdiction to try the defendants on counts 2, 3 and 4, because the complaint and commitment by the committing magistrate related only to counts 1 and 5 whereas the other three were added on the basis of additional evidence introduced at the preliminary hearing to show a general scheme or plan. Parks v. Superior Court, 38 Cal.2d 609 [241 P.2d 521] disapproving People v. Wyatt, 121 Cal.App. 180 [8 P.2d 901] is cited for the unconstitutionality and invalidity of such added counts relating to different transactions. Respondent denies the restricted character of the commitment as not appearing in the record. It is further argued that section 996, Penal Code, excludes this objection on appeal if not made in the court below by motion to set aside. Although appellant moved to set aside the information "upon all of the statutory grounds set forth in section 995 of the Penal Code

of the State of California, and in particular upon the grounds of lack of probable cause'' argument was only presented to show lack of probable cause, and no error can be based on grounds not submitted and shown to exist below. (*People* v. *Hinshaw*, 194 Cal. 1, 9 [227 P. 156]; *People* v. *Arnest*, 133 Cal.App. 114, 120 [23 P.2d 812]. Failure to move to set aside on the ground urged on appeal was not involved in *Parks* v. *Superior Court, supra*. For the fatal effect of the omission see *People* v. *Harris*, 219 Cal. 727, 729-730 [28 P.2d 906]. *People* v. *Greene*, 80 Cal.App.2d 745, 749 [182 P.2d 576]; *People* v. *Ahern*, 113 Cal.App.2d 746, 750 [249 P.2d 63].)

Next appellant Reimringer urges that the evidence was insufficient to sustain the verdict and judgment because in each count the testimony of the woman on whom the abortion was committed was not corroborated as required by section 1108, Penal Code. ■ With respect to the first count, his presence in the house of the crime observed by the police officers and his evasive and contradictory statements showing consciousness of guilt (*People* v. *Malone*, 82 Cal.App.2d 54, 64 [185 P.2d 870]), undoubtedly connect him sufficiently with the offense. The main corroboration presented by respondent as to each of the other three abortion counts is that Dr. Reimringer was also recognized by the other women not involved in the count as the physician who operated on them. In law this is sufficient. ■ "It is established that the 'Testimony relating to one count may be considered by the jury in corroboration of the testimony of the woman upon whom an abortion was alleged to have been performed in another count.'" (*People* v. *Kendall*, 111 Cal.App.2d 204, 210 [244 P.2d 418].) In *People* v. *Solano*, 48 Cal.App.2d 126, 130 [119 P.2d 381], this court held that showing of another offense, similar in all respects, committed by the same defendant, and based on the same plan was good corroboration. The well proved abortion of the first count is then legally sufficient to corroborate the similar abortions in the other counts and the factual sufficiency is for the jury.

■ As to the conspiracy count the evidence seems sufficient as the existence of the agreement may be inferred from the acts and conduct of the defendants in mutually carrying out a common purpose in violation of a statute (*People* v. *Sica*, 112 Cal.App.2d 574, 581 [247 P.2d 72]). The mutually carrying out of the abortion on Patricia Williamson, the only abortion as to which conspiracy is alleged, is sufficiently proved.

■ Both appellants complain of prejudicial misconduct of

the trial court and the district attorney. They contend that numerous statements of the court prevented a fair trial. It is first said, illustrated with many examples, that the court unduly rushed the defense attorneys making it difficult adequately to represent their clients. The point is sufficiently answered by respondent that in this respect (and many others) no objections were made below, that the point was not even brought up on motion for new trial, and that the court only exercised the reasonable control over the proceedings which, as to interrogation of witnesses, is within section 2044, Code of Civil Procedure. Next appellant Reimringer complains of digressions by the court which are said to have created a camaraderie among judge, jury and prosecuting attorneys while ridiculing defendants and their counsel. ▮ A few digressions or humorous remarks do not constitute misconduct (*People* v. *Williams,* 32 Cal.2d 78, 84 [195 P.2d 393]). Illustrations are given of an alleged difference in attitude towards counsel for the prosecution and for the defense, of which the strongest is said to be the holding of counsel for Raegan in contempt. Defense counsel interrupted the district attorney, allegedly because the district attorney in an argument, brought objectionable matter before the jury, and the district attorney and counsel addressed the court simultaneously for some time until the court, after warning, held counsel in contempt. On the motion for new trial Dr. Reimringer's counsel (not the present one) praised the impartiality and courtesy of the court, and Mr. Belcher, present counsel of Raegan, stated that he was probably properly held in contempt. Next appellant Reimringer complains of comments of the court on evidence by which the court showed his feeling as to the facts. ▮ Counsel for defense had argued that when Raegan gave his statement to the authorities the conspiracy, if there were any, had ended because the treatment had ended, so that his statement was not binding on Reimringer. The court agreed with counsel saying that it felt that at said time ''the conspiracy had been consummated'' without using a word like ''alleged'' or ''if any.'' In the context the failure to use such expression does not seem prejudicial. (*People* v. *Amaya,* 40 Cal.2d 70, 78 [251 P.2d 324].) At any rate the jury was instructed to disregard any possible assumption by the court that any fact was proved. The assignments of misconduct of the court made by appellant Raegan are of the same kind as those of appellant Reimringer stated above. All are without merit.

■ Appellant Reimringer assigns as misconduct of the district attorney: Statements of "fact" unsupported by evidence. Of the many examples given only one need be stated. In an offer of proof to show materiality of the results of a search of Dr. Reimringer's car which he had not used on the evening of the Williamson abortion, the district attorney stated that the patient had testified that Dr. Reimringer had said that he used another medicine instead of penicillin that he would ordinarily administer because the penicillin was in his own car which he was not driving. Counsel for Dr. Reimringer objected because he thought that said evidence was stricken. The district attorney: "By no means, your Honor. If I may say, that was a statement of the defendant and it's in the record." The district attorney was in error because there could not be in the record such statement by the defendant because he had not yet testified. What was meant was that the woman had testified to such statement of defendant and that such testimony was actually in the record. There is no serious error in this incident, nor in any of the other examples not stated herein.

It is contended that on several occasions the district attorney asked witnesses questions containing highly prejudicial matter not because the district attorney expected or could expect a favorable answer but to bring the matter before the jury by the question itself. Character witnesses were asked questions whether they had heard rumors that Dr. Reimringer at his residence was maintaining clandestine affairs, that he allowed his home to be used by other doctors for clandestine affairs with women, that he had been arrested for drunk driving. The answers were always in the negative and no attempt was made to show that there was any basis for the questions. Respondent contends that such was legitimate cross-examination citing (*People* v. *McKenna*, 11 Cal.2d 327, 335-336 [79 P.2d 1065], where it is said that, "In the absence of a showing of bad faith" a character witness may be asked whether he has heard accusations inconsistent with the character he attributed to defendant. Though there is no direct showing of bad faith here we are disposed to condemn the practice as a part of the general misconduct hereinafter noted.

There is no doubt that the district attorney in the final argument used much language tending to play on the emotions of the jury instead of on their calm judgment. It was said that the operation was done "without the benefit of any kind of human decency at all," that it must have shocked the jury

as it would any decent human being, that it was a "bungling, butchering job," that the doctor dashed back to his Vodka party leaving this poor mistreated creature with his accomplice to cart and dump her back at the bar; "$500 . . . paid for this job of bungling by these two butchers." There were more such remarks about utter abysmal disregard for every human decency and about butchery. A deputy district attorney thereafter went a step further by saying that it was poor judgment of his colleague to compare defendants to butchers because, when he did that every butcher in Contra Costa County hung his head in shame. Later he dramatically invited the jury to look on an instrument "and see the blood of Patricia Williamson." Respondent contends that in view of the evidence in the case the epithets, et cetera, were not prejudicial, citing 4 California Jurisprudence 10-Year Supplement 773 where many . examples are given and cases like *People* v. *King,* 13 Cal.2d 521, 526-527 [90 P.2d 291] to the same effect and excluding assignment of misconduct on appeal where no objection was made below (which does not seem to have been done in this case) and where under the evidence no other result than conviction would have been reached without such misconduct. However other cases have been reversed on such grounds, some even where there was no objection, as the bad effect of the misconduct could not be undone. See *People* v. *Lynch,* 60 Cal.App.2d 133, 143 [140 P.2d 418] ; *People* v. *Wynn,* 44 Cal.App.2d 723, 733 [112 P.2d 979] ; *People* v. *Duvernay,* 43 Cal.App.2d 823, 827-829 [111 P.2d 659].

Appellant Reimringer assigns the following as errors in the admission of evidence :

A conversation of Raegan with Patricia Williamson in pursuance of the conspiracy was admitted as to Dr. Reimringer over objection that the corpus of the conspiracy had not been established but subject to be stricken if said conspiracy should not be established. ▆ It is stated in *People* v. *Curtis,* 106 Cal.App.2d 321, 326 [235 P.2d 51, 122], that such declaration "is not admissible in evidence until prima facie proof has been made of the existence of the conspiracy, subject to the power of the trial judge to regulate the order of proof." What happened here seems in accordance with this rule.

▆ The admission of the notebook containing names of abortees found in Raegan's pocket and used by him in his statement to the authorities. At the time of the offer there was evidence only of the officer who found it on Raegan.

Respondent argues that the fact that the notebook was in Raegan's pocket was admissible because the fact of the possession was in itself incriminating and for that purpose the book was not hearsay. This is a sufficient answer.

Motions to strike unresponsive parts of answers were denied. Respondent urges that this was correct where these answers, though unresponsive, were relevant and material. This position is supported by *Holzer* v. *Read,* 216 Cal. 119, 122 [13 P.2d 697].

Reimringer complains of the admission of Raegan's statement notwithstanding the fact that it was expressly declared inadmissible as to him, because the effect on the jury of this statement, which disclosed that all abortions were performed by Reimringer, would nevertheless be very damaging. It is contended that the portion relating to Dr. Reimringer should have been expunged or a separate trial of Dr. Reimringer ordered. However although both attorneys examined the confession neither moved to strike part or to separate the trial. This precludes them from raising this point on appeal.

The admission of the statement of Dr. Reimringer is attacked although it was clearly admissible because of the evasive character of defendant's testimony and the conflict with the observations made by the police officers at the place of the crime. Although objection was made to the admission of all irrelevant matter in it, no motion to strike any separate portion was made and no prejudice appears.

Error is assigned in excluding a defense question of a character witness: ''And what is his general reputation for medical skill and medical ethics?'' Respondent contends that the only trait of character involved in the accusation was his reputation as law abiding. It is said that not medical ethics but only general ethics are involved in the charge. This seems highly doubtful. Abortion is a breach of medical ethics not to be expected from a physician of high medical ethics. The importance of medical skill is based on the accusation of ''bungling'' in the final argument which could not then have been foreseen. But if the evidence, as here, shows a very primitively performed operation, the fact that defendant is a skillful physician would be some indication that he was not the one who performed it. The witness should have been allowed to answer.

On cross-examination of the abortee Gallaher, counsel for Raegan attempted to impeach her by showing that she had

not made the same statement detrimental to Raegan at the preliminary hearing. The court agreed with the district attorney that there was no inconsistency. ■ Omission of facts on a former hearing is not good impeachment unless on that occasion the witness had been particularly questioned as to those facts. (*People* v. *Casanova,* 54 Cal.App. 439, 446 [202 P. 45].)

■ Appellant Reimringer complains that almost immediately after the instruction which requires corroboration of the testimony of an accomplice the court gave the instruction that the women on whom the abortions were committed were not accomplices and that this combination would mislead the jury in thinking that the testimony of said women did not require corroboration. However the court twice instructed on the necessity of corroboration of the testimony of such a woman. The instructions are correct. ■ The woman who submits to an abortion is not an accomplice of the one who performs the operation (*People* v. *Clapp,* 24 Cal.2d 835, 839 [151 P.2d 237]), but her testimony requires corroboration under the special provision of section 1108, Penal Code.

■ For the same reason it was not error to omit an instruction that the testimony of said women ought to be viewed with distrust as section 2061, subdivision 4, Code of Civil Procedure requires such instruction only as to accomplices.

■ It is said that an instruction given by the court as to the exclusion of confessions of Raegan as to Reimringer, without such restriction as to admissions was prejudicial. However former rulings and other instructions made it clear that no part of the admitted statement of Raegan could be used against Reimringer.

Finally it is contended that an amended judgment entered on March 5, 1952, more than a month after the duly pronounced and entered original judgment of February 4, 1952, outside of the presence of defendants and when they had started to serve time was a nullity. The original judgment contained, with respect to the manner in which the sentences were to run, the following:

Sentences on counts 2, 3 and 4 to run consecutively to sentence on count 1; the sentence on count 5 to run concurrently with count 1. The amended judgment contained instead that the second count was to be served after the first, the third after the second, the fourth after the third all consecutively, the fifth concurrently with the first.

Appellants contend that the first formulation makes counts 2, 3 and 4 run concurrently (*In re Sweet,* 113 Cal. App.2d 413 [248 P.2d 94]) whereas the new formulation makes them run consecutively. Such modifying of a judgment as to a felony cannot take place without the defendant being present (Pen. Code, § 1193, subd. 1) and cannot take place at all when the sentence has been entered in the minutes of the court or defendant has begun serving said sentence. (*People* v. *McAllister,* 15 Cal.2d 519, 525 [102 P.2d 1072].) Respondent contends that, although the original formulation showed the intention of the court that only the fifth count should run concurrently with the first, whereas none of the others should run concurrently with any other count, there was no express determination in what manner counts 2, 3 and 4 should be served with respect to each other and that on the failure of such determination section 669, Penal Code, gave the court power to make such determination within 60 days from the actual commencement of imprisonment and in the absence of the defendant. On its face the provision relates to prior existing judgments at the time of the pronouncing of a later judgment only, but respondent relies on *People* v. *Finkel,* 94 Cal.App.2d 813 [211 P.2d 888], and *People* v. *Carr,* 6 Cal.2d 227 [57 P.2d 489], for the application of this provision also to judgments on separate counts of one information. Although these cases hold so only as to the power to impose consecutively running sentences the same construction must apply to the whole section which forms one unit. There is no reason conceivable why a different rule should apply to the correction of a failure to determine the manner in which a sentence should run with respect to a prior sentence known to the court than to the same failure with respect to the manner of running of sentences on different counts of the same judgment.

We hold that the court had power to make the modification in the manner it did. *In re Sweet, supra,* is not in point. It does not involve the power of modification but holds only in accordance with the express provision in section 669, Penal Code, that where there was no determination of the manner in which the sentences should run with respect to each other in the original judgments, and no later determination either, the judgments run concurrently.

Our decision on this point is without importance for appellant Reimringer, because with respect to him the counts as to which the judgment was amended will be reversed for

new trial, but is required with respect to appellant Raegan who urged the same contention.

In a separate brief the defendant Raegan raises substantially the same points. They do not require separate treatment. ▉ As to the evidence all the elements of his participation in the crimes were shown. It was shown that he procured the abortees, furnished his kitchen for the operations, and aided his codefendant in performing the operations. *People* v. *Le Grant*, 76 Cal.App.2d 148 [172 P.2d 554], upon which he relies, supports the judgment here.

He makes an extensive attack upon the conduct of the district attorney—saying nothing about his own which brought him in contempt of court. We do not approve of either, but can condemn one no more than the other. The case was not tried with dignity nor respect for the ethics of the profession but it is fair to assume that the jury was not influenced by the repeated emotional outbursts of counsel insofar as this appellant is concerned.

▉ The reference to the recent miscarriage suffered by Mrs. Raegan, though wholly foreign to any of the issues of this case and hence improper, cannot be deemed prejudicial to this defendant.

Criticism of the conduct of the trial court is without merit. In general the court was trying to keep counsel within bounds in the frequent outbursts of temper that occurred during the trial. The assignment of· errors of law relates to the same matters as those which have been treated.

▉ The notebook which was taken from the defendant at the time of his arrest was properly admitted in evidence as showing his connection with the complaining witnesses upon whom the operations had been performed.

Of the large number of assignments of error by both appellants we have treated those which seemed to merit consideration. As to the appellant Reimringer we are satisfied from a review of the record that the evidence plainly supports the conviction on the first and fifth counts. ▉ As to counts two, three and four the evidence was less satisfactory and the identification of appellant was extremely weak. Because of this factor it cannot be said that the errors above noted (misconduct of the district attorney) did not influence the jury's verdict. In this respect the case is in line with *People* v. *Kirkes*, 39 Cal.2d 719, 726 [249 P.2d 1]. This however, does not apply to appellant Raegan.

The judgment against Reimringer on the first and fifth

counts is affirmed.  As to the second, third and fourth counts it is reversed for a new trial.  The judgment against Raegan is affirmed in all five counts.

Goodell, J., and Dooling, J., concurred.

Appellant Raegan's petition for a rehearing was denied March 14, 1953.