[Crim. No. 19066. June 3, 1976.]

In re DONALD LEE CALHOUN on Habeas Corpus.

## Counsel

John F. Bowman, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Garrick W. Chock, Deputy Attorneys General, for Respondent.

## Opinion

**TOBRINER, J.**—Penal Code section 669[1] permits a trial court under certain circumstances to defer for 60 days a decision on whether a defendant with a prior existing conviction should serve his terms concurrently or consecutively. The trial court in the instant case relied upon section 669 in deliberately deferring its sentencing of a defendant convicted of multiple offenses. During the deferral, the court received an ex parte communication from the prosecutor recommending imposition of consecutive sentences; thereafter, the court sentenced the defendant to consecutive terms. As we shall explain, we have concluded that the sentencing procedure failed on three separate grounds: (1) The reference to a "prior existing judgment" in section 669 does not allude to a second conviction in the same proceeding; (2) section 669 does not authorize a deliberate deferral of sentencing; and (3) section 669 does not permit the sentencing court to receive extrajudicial communications during the deferral period.

Petitioner Donald Lee Calhoun, a juvenile with no prior record, pleaded guilty in the municipal court to two counts of first degree

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

robbery. At the probation and sentencing hearing in superior court, the judge announced that he was reserving decision on the issue of whether Calhoun's terms should run concurrently or consecutively. Later, the prosecutor wrote a memorandum to the judge reminding him that Calhoun's terms "automatically" would run concurrently if a determination were not made within 60 days of the judgment. The prosecutor recommended consecutive terms for Calhoun because, as he wrote to the judge, "although positive identification was impossible, I personally feel that . . . [he] was the individual that shot [two persons]" and because "this court observed Donald Calhoun perjure himself on two occasions" in an alleged accomplice's trial.[2]

The prosecutor did not send a copy of the letter to Calhoun or his counsel, nor did he afford any opportunity to Calhoun to rebut the charges leveled in the communication. Thereafter, within the 60-day period the court entered a *nunc pro tunc* order sentencing Calhoun to consecutive terms. Calhoun subsequently petitioned for habeas corpus, and we issued an order to show cause.

Section 669 mandates the sentencing court to specify at the time of judgment whether a defendant convicted of two or more crimes will serve his terms concurrently or consecutively.[3] That decision, however,

---

[2]The letter read in full:

"Dear Judge:

"As you requested here is the Presentence Probation Department Report on Donald Calhoun, originally submitted prior to Calhoun's sentencing on September 26, 1973. At that time, September 26, 1973, determination of whether the two sentences would run concurrent or consecutive was deferred to a future date. As you are aware, that decision must be made before November 26, 1973, or the terms automatically run concurrent. [¶] Our office respectfully requests that Donald Calhoun's terms be ordered to run consecutive, despite Calhoun's age. I remind the court that the other codefendant's [*sic*] received sentences of from 10 years to life (Henderson) to 20 years to life (Floyd Calhoun) with Steven Ray Collins awaiting sentencing now for two bank robberies. Also, although it cannot be proven because positive identification was impossible, I personally feel that in the Crocker Bank robbery, Donald Calhoun was the individual that shot Ernest Thompson and Daniel Schenk, with Steven Ray Collins being in the vault with the sawed-off shotgun. Lastly, this court observed Donald Calhoun perjure himself on two occasions in the Steven Collins case, which leads me to believe that 'rehabilitation' in his case is doubtful and that by falsely testifying, he has forfeited any consideration for leniency in sentencing. For these reasons, I respectfully request that the sentences of Donald Calhoun be ordered to run consecutive.

"Respectfully

"/s/ Douglas A. Sears"

[3]The first sentence of section 669 provides in part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings

may be rendered "at any time prior" to 60 days after judgment if either (1) the sentencing courts did not know of a prior existing judgment or (2) the court, "having knowledge [of the prior existing judgment]," fails to determine how the terms of imprisonment shall run.[4] If no decision is made, the terms run concurrently.

1. *The reference to a "prior existing judgment" in section 669 does not allude to a second conviction in the same proceeding.*

The section allows deferral only when there is a "prior existing judgment." Since Calhoun had no previous record, his sentencing determination may be deferred only if the term "prior existing judgment" encompasses a second conviction in the same proceeding. We hold that it does not.

The final sentence of section 669 suggests the appropriate definition of the term. There the Legislature mandated the State Board of Prison Directors to inform the sentencing court of all "prior judgments" against the defendant.[5] Obviously, there is no need to inform the sentencing court of convictions in the same proceeding. The term "prior judgments" thus evidently refers to convictions *before* the present proceeding. The Legislature's use of a virtually identical term in the authorization for

---

or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be . . . ."

[4] The pertinent language of section 669 provides: "In the event that the court at the time of pronouncing the second or other judgment upon such person had no knowledge of a prior existing judgment or judgments, or having knowledge, fails to determine how the terms of imprisonment shall run in relation to each other, then, upon such failure so to determine, or upon such prior judgment or judgments being brought to the attention of the court at any time prior to the expiration of 60 days from and after the actual commencement of imprisonment upon the second or other subsequent judgments, the court shall, in the absence of the defendant and within 60 days of such notice, determine how the term of imprisonment upon said second or other subsequent judgment shall run with reference to the prior incompleted term or terms of imprisonment. Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

[5] The relevant language provides: "The State Board of Prison Directors shall advise the court pronouncing the second or other subsequent judgment of the existence of all prior judgments against the defendant, the terms of imprisonment upon which have not been completely served."

subsequent sentencing determinations indicates that the Legislature there also was referring only to judgments of conviction prior to the instant proceeding. Thus we conclude that the Legislature did not authorize a subsequent sentencing determination when the only "prior" consists of another conviction in the same case.

The Court of Appeal decision in *In re Sweet* (1952) 113 Cal.App.2d 413, 415 [248 P.2d 94], supports this interpretation of the section. In *Sweet,* the court construed section 669 as authorizing a deferred sentencing determination only when the defendant had *earlier* been reached under other Penal Code sections. Thus, in *People* v. *McGee* (1934) 1 Cal.2d 611, 614 [36 P.2d 378], we held that a defendant was ineligible for probation only if his previous conviction occurred *before* the offense for which he was subsequently charged. Similarly, in *People* v. *Diaz* (1966) 245 Cal.App.2d 74, 77 [53 Cal.Rptr. 666], the court held that a narcotics addict was subject to the mandatory 15 years to life penalty for third offenders only if the defendant had been twice convicted before the instant offense. (See *In re Pfeiffer* (1968) 264 Cal.App.2d 470, 476 [70 Cal.Rptr. 831]; 24 A.L.R.2d 1234, 1248-1249.) A similar narrow interpretation of the term "prior conviction" is appropriate in the instant case.

As the People point out, the Court of Appeal in *People* v. *Reimringer* (1953) 116 Cal.App.2d 332, 342-343 [253 P.2d 756], in a case in which the defendant was convicted of multiple offenses, reached a contrary conclusion, interpreting the "prior existing judgment" language of section 669 as inclusive of the earlier conviction. Under this construction, deferral of sentencing would apparently be appropriate in any case involving multiple convictions. We reject this interpretation, and disapprove the decision in *Reimringer*; we do not believe the Legislature could have reasonably intended the phrase "prior existing judgment" to apply to a conviction entered only seconds before the "subsequent" conviction.

Thus, since there was no "prior existing judgment" in the instant case, the trial judge lacks the authority to defer sentencing.

2. ■ *Section 669 does not authorize a deliberate deferral of sentencing.*

Moreover, we conclude that deferral of sentencing was inappropriate in this case for an additional reason. In *In re Sweet, supra,* 113 Cal.App.2d 413, the court suggested that section 669 authorizes a subsequent determination of sentencing only if a trial court is unaware of

the prior judgment, or if aware of a prior judgment, *inadvertently* fails to decide at the time of judgment how the terms should run. In the instant case, of course, the trial court was well aware of both convictions and deliberately deferred the sentencing decision. Under *Sweet*'s analysis, the statute did not authorize this deliberate deferral.

The People, pointing out that the statutory language does not distinguish between inadvertent and deliberate inaction by the trial court, urge us to construe the statute to permit a later sentencing decision in both situations, thus validating the intentional deferral in the instant case. This latter interpretation strains the statutory syntax. The 60-day delay provisions are phrased as *exceptions* to the general rule that the trial court must decide at the time of judgment how the terms should run. Under the People's reading, there would be no situation in which the trial judge could not delay the determination of sentencing when confronted with a defendant who was subject to a prior existing judgment; the exceptions would swallow the rule, vitiating the requirement of immediate determination.

Moreover, the People's interpretation conflicts with the policy of speedy dispatch and certainty expressed in the requirement of section 1191 that judgment and sentence be pronounced within 21 days of conviction. Although the People speculate that the Legislature may have desired the trial judge to be able to defer his determination of sentencing for more careful deliberation, the postponements already permitted by section 1191 provide ample opportunity for reflection. Since no reason appears why the Legislature might have intended to depart from the statutory policy of speedy sentencing, we must adopt the interpretation most consistent with the overall legislative design (see *People* ex rel. *Younger* v. *Superior Court (Board of Port Commissioners)* (1976) 16 Cal.3d 30 [127 Cal.Rptr. 122, 544 P.2d 1322]), namely, that the trial judge cannot *deliberately* postpone the determination of whether his sentence will run concurrently or consecutively.

The legislative history supports this construction. Before 1935, the trial court's failure to specify consecutive terms at the time of judgment resulted automatically in concurrent terms. Thus, even if the trial court did not know at the time of judgment of a prior existing conviction, the second sentence merged into the unserved term (*In re Radovich* (1943) 61 Cal.App.2d 177, 181-182 [142 P.2d 325]). The Legislature eliminated this anomaly by amending section 669 in 1935 to require the State Board of Prison Directors to inform the trial court within 60 days after judgment

of prior existing convictions and to allow the trial court, upon learning of the earlier judgment, to specify that the subsequent term would be served consecutively.

This amendment did not, however, prevent accidental concurrent sentencing because of other sources of error, such as the trial judge's forgetfulness or his unawareness that an immediate decision was required. We regard the 1941 amendment, allowing a subsequent sentencing determination in those cases in which the trial court knew of the prior conviction, as intended to meet this problem of "inadvertent" error, rather than to sanction intentional postponement of the sentencing determination. We thus conclude that Penal Code section 669 authorizes a late sentencing determination of a defendant who has a prior existing judgment only if the trial court was (1) unaware of the earlier conviction or (2) knew of the earlier judgment, but inadvertently omitted the determination. Since the consecutive sentences in the instant case were imposed after an acknowledged deliberate delay, the judgment cannot stand.

3. ██ *Section 669 does not permit the sentencing court to receive extrajudicial communications during the deferral period.*

Finally, the sentencing court also erred in receiving an ex parte communication from the prosecutor concerning Calhoun's sentence without allowing Calhoun an opportunity to respond.[6]

Under sections 1203 and 1204, the sentencing judge may receive information upon which to base his decision in either (1) a probation report, which must be provided to the defendant at least two days before sentencing, or (2) a hearing in open court on aggravating, or mitigating circumstances. Section 1204 prohibits receipt of information from other sources.[7]

---

[6]The People concede that such ex parte communication by the prosecutor raises grave ethical issues. American Bar Association, Standards Relating to the Prosecution Function and the Defense Function, section 2.8 (Approved Draft, 1971) states: "It is unprofessional conduct for a prosecutor to engage in unauthorized ex parte discussions with or submission of material to a judge relating to a particular case which is or may come before him."

[7]Section 1204 provides in part: "No affidavits or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except [a probation report or testimony under sections 1203 and 1204]."

*People* v. *Neal* (1950) 97 Cal.App.2d 668, 674-677 [218 P.2d 556], applied this prohibition to a trial court's determination of consecutive sentences. The trial court sentenced defendant to consecutive terms on two counts of attempted murder. At the sentencing hearing, the district attorney was allowed to recite, without presenting evidence, a long list of purported prior offenses by defendant. The Court of Appeal, in remanding the sentencing determination, noted that section 1204 allows the court "to receive *evidence*" (italics in original) and concluded that the section banned receipt of the prosecutor's statement (see *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791-792 [21 Cal.Rptr. 826]).

Like the court in *Neal,* we see no reason to doubt the applicability of section 1204 to the decision to impose consecutive or concurrent sentences, whether rendered at the time of judgment or postponed pursuant to section 669. We therefore construe section 1204's specific prohibition against receipt of extrajudicial statements to apply in the instant case.

We are compelled to require exclusion of such ex parte communications not only by section 1204, but also by our responsibility to construe section 669 to avoid possible constitutional infirmity. Although the full adversary safeguards of trial need not apply in the sentencing procedure (*Williams* v. *New York* (1949) 337 U.S. 241 [93 L.Ed. 1337, 69 S.Ct. 1079]), both state and federal decisions have recognized the defendant's right to be present with counsel at sentencing (*In re Levi* (1952) 39 Cal.2d 41 [244 P.2d 403]; *Mempha* v. *Rhay* (1967) 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254]), and to compel disclosure of statements used against him in probation and parole proceedings (*People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326]; *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]).

Such decisions cast doubt on the constitutionality of the trial court's receipt of sentencing information adverse to the defendant without affording him an opportunity to respond. Such a procedure undermines the rationale of extending the defendant's protections: to guard against the inadvertent use of misinformation and to ensure the defendant an adequate opportunity to present his claims (*In re Perez* (1966) 65 Cal.2d 224, 229-230 [53 Cal.Rptr. 414, 418 P.2d 6]). If a judge may receive information outside the record, there seems little point in ensuring a properly adversary procedure at sentencing. Thus, in accord with our obligation to construe state statutes to avoid any constitutional question,

we reject the view that section 669 authorizes receipt by the judge of such ex parte communications without affording the defendant an opportunity to answer. (See Note (1942) 15 So.Cal.L.Rev. 35.)

In sum, since the trial court failed to render a timely decision, based upon information properly received under section 1204, to impose consecutive sentences, Calhoun's terms must be deemed concurrent. The order to show cause, having served its purpose, is discharged, and writ of habeas corpus is denied. The trial court is directed to amend the abstract of judgment to reflect concurrent sentences, and to forward the abstract to the Department of Corrections.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.