[Crim. No. 8552. Fourth Dist., Div. One. Mar. 9, 1977.]

In re JERRY WAYNE HANCOCK on Habeas Corpus.

## COUNSEL

Harrigan, Ruff & Osborne and Joseph W. Ruff for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler, Alan S. Meth and Jay M. Bloom, Deputy Attorneys General, for Respondent.

## OPINION

**BROWN (Gerald), P. J.**—In this proceeding in habeas corpus,[1] Jerry Wayne Hancock claims his sentencing lacks the appearance of fairness and seeks to be resentenced by a judge whose impartiality and fairness toward him cannot reasonably be questioned. We conclude such relief should be afforded.

The facts are not in dispute. Hancock had pleaded guilty to one count of first degree burglary and was awaiting sentencing when the following events occurred:

The deputy district attorney assigned to the case learned which judge had been assigned to sentence Hancock and became concerned since he believed the judge "was not only a new judge but also had views indicating . . . that he would be overly lenient in sentencing criminals." The deputy was also concerned someone may have .improperly arranged for the transfer of the case to that judge in order to obtain a more lenient sentence than [Hancock] might receive before the supervising judge of the criminal division of the superior court, to whom the case had originally been assigned.

The deputy discussed the matter with the district attorney, the chief deputy district attorney, and the assistant district attorney. They consid-

---

[1]The People argue the petition should not be entertained in light of an unexplained delay of 9 months in seeking relief, relying upon *People* v. *Jackson,* 10 Cal.3d 265, 268 [110 Cal.Rptr. 142, 514 P.2d 1222] [11-year delay]; *In re Wells,* 67 Cal.2d 873, 875 [64 Cal.Rptr. 317, 434 P.2d 613] [19-year delay]; and *In re Swain,* 34 Cal.2d 300, 302 [209 P.2d 793] [3-year delay, approx.]. Because of the unusual circumstances of this case, the considerably greater delays involved in the authorities cited, the importance of the principle involved, and the apparent need of the prosecution for guidance from this court, we do not consider the delay to be unreasonable.

ered whether the assigned judge might be challenged under Code of Civil Procedure section 170.6 and were advised by the deputy, who had researched the question, that such a challenge would lie. However, several views were expressed as to the propriety of using such a challenge.

The district attorney directed the chief deputy district attorney to contact the supervising judge of the criminal division to determine the reasons the case had been transferred from his court.

The chief deputy district attorney made an appointment to see the supervising judge and went to his chambers. During their conversation, the chief deputy disavowed any intent to discuss the merits of the case in any fashion but proceeded to advise the judge that the case "involved an El Cajon Police Officer" and was "sensitive"[2] and the district attorney's office was concerned as to why the case appeared to have been transferred at the last minute, particularly since the assigned judge was new on the bench.

The supervising judge decided, because of the controversial nature of the case, the probation and sentencing hearing should be transferred to a more experienced judge. In view of the short time before the scheduled hearing, the supervising judge decided to transfer the case to his own department, rather than another department which would already have a full calendar for the time of the hearing.

There had been discussions in the district attorney's office as to whether the chief deputy district attorney, or the district attorney himself, should appear on behalf of the People at Hancock's sentencing, to demonstrate the significance of the case. Because the supervising judge had transferred the case to himself, the chief deputy district attorney declined to appear, and recommended that the district attorney not appear either. So the trial deputy assigned to the case represented the People at the sentencing hearing.

The supervising judge denied probation and sentenced Hancock to prison.

---

[2]According to the declaration of the supervising judge: "He informed me that . . . I should be aware of the fact that this was a very controversial case involving an El Cajon police officer who had been charged with a number of burglaries in the East County area and who had entered a plea of guilty to one count of first degree burglary. Other than this statement he did not discuss the merits of the case nor the position of the District Attorney's office with regard to sentencing."

Hancock argues the ex parte communications between the prosecutor and sentencing judge violated rules of professional and judicial conduct, relieved the prosecution of the necessity of employing Code of Civil Procedure section 170.6 to cause a change in the sentencing judge, and deprived him of due process of law. He contends the appearance of unfairness and partiality in his sentencing entitles him to a new hearing before a judge from another county and that he need not show actual prejudice caused by the ex parte communications.

The People "fail to see how petitioner had any fundamental rights prejudiced by reason of the transfer of his case." They urge: (1) the purpose of contacting the supervising judge was merely to determine why the case had been transferred and not to influence Hancock's sentencing; (2) the merits of the case were not discussed; (3) Hancock was not harmed by the ex parte discussion since the sentencing judge would have learned from the probation report the case was a sensitive one involving a police officer, and the People therefore conveyed no information which would not otherwise have been received; (4) Hancock was not given any harsher sentence than he deserved; (5) Hancock has no constitutional right to have the prosecution use its challenge under Code of Civil Procedure section 170.6; (6) Hancock was free to challenge the supervising judge if he felt the judge would be biased at the time of sentencing, and the fact no challenge was made indicates Hancock was satisfied the judge would fairly and objectively review his case;[3] (7) Hancock has no constitutional right to be sentenced by any specific judge, and the fact the matter was transferred did not, therefore, deprive petitioner of any fundamental rights; (8) Hancock's sentence was fair and proper, and that is substantiated by his failure to appeal the sentence, since he could have alleged the court abused its discretion by sentencing him to prison;[4] and (9) Hancock delayed unreasonably in raising the issue (see fn. 1). Some of these arguments, obviously, need "to be taken with a few tons of salt."[5]

■ "Although the full adversary safeguards of trial need not apply in the sentencing procedure [Citation.], both state and federal decisions have recognized the defendant's right to be present with counsel at

---

[3]This argument ignores the salient fact Hancock was unaware of the ex parte communication until after sentencing.

[4]The matters raised in this proceeding, of course, were not part of the record of the trial court and were not appealable.

[5]The phrase is borrowed from Mark Twain (see Clemens, *Fenimore Cooper's Literary Offenses*, in Toward Today (Walter edit. 1938) pp. 438, 440).

sentencing [Citations], and to compel disclosure of statements used against him in probation and parole proceedings [Citations]." (*In re Calhoun*, 17 Cal.3d 75, 84 [130 Cal.Rptr. 139, 549 P.2d 1235].)

█ The sentencing court's receipt of information adverse to the defendant without his knowledge and without affording him an opportunity to respond "undermines the rationale of extending the defendant's protections: to guard against the inadvertent use of misinformation and to ensure the defendant an adequate opportunity to present his claims." (*In re Calhoun, supra,* 17 Cal.3d 75, 84.) It undermines the appearance of fairness of the proceeding.

In our view, the ex parte statements by the prosecution were adverse to Hancock. The remark that the case was a "sensitive" (or "very controversial") one "involving a police officer" is susceptible of the connotation that the district attorney wanted Hancock sent to prison. This treats the merits of sentencing.

Moreover, we cannot reconcile the timing of the ex parte contact with its claimed purpose. If the motive of the district attorney was purely to satisfy his curiosity about how the case was assigned, and not to have the case transferred, the inquiry could and should have been made after the court was completely through with Hancock's sentencing. Instead, the chief deputy district attorney, who was not assigned to the case, questioned the experience of the assigned judge without any notice to Hancock's counsel.

Grave ethical issues are raised by an ex parte communication from the prosecution concerning sentencing. As the Supreme Court recently had occasion to note, American Bar Association, Standards Relating to the Prosecution Function and the Defense Function, section 2.8 (Approved Draft, 1971) states: " 'It is unprofessional, conduct for a prosecutor to engage in unauthorized ex parte discussions with or submission of material to a judge relating to a particular case which is *or may come before him.*' " █ (*In re Calhoun, supra,* 17 Cal.3d 75, 83, fn. 6 [italics added].)[6]

---

[6]Although the parties do not raise the point, Penal Code section 1204 also provides in part: "No affidavits or testimony or representation of any kind, verbal or written, can be offered to or received by the court, *or a judge thereof,* in aggravation or mitigation of the punishment, except [a probation report or testimony under sections 1203 and 1204]." (Italics added.)

"Under sections 1203 and 1204, the sentencing judge may receive information upon which to base his decision in either (1) a probation report, which must be provided to the

The People argue in various forms Hancock has not shown any actual bias or prejudice in his sentencing. The principle involved in this case is not merely one of fairness to Hancock but also one of maintaining respect for the law and promoting confidence in the administration of justice. ■ As the United States Supreme Court stated in *In re Murchison,* 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623, 625]: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt* v. *United States,* 348 U.S. 11, 14 [75 S.Ct. 11, 13]."

The appearance of justice is not satisfied where the People behind closed doors have been the moving force in the transfer of this case from the assigned judge and where the People have made ex parte statements to the sentencing judge which are adverse to the defendant's interest. Due process requires that Hancock be resentenced.

We are unpersuaded, however, by Hancock's argument only a judge from another county can sentence him fairly. The judge who sentenced Hancock is no longer the supervising judge of the criminal division, and we are unwilling to assume upon remand Hancock could not be fairly sentenced if his case were assigned by the new supervising judge to a judge who has not been involved.

The sentence is vacated, and we order the petitioner to be resentenced before a judge who has had no contact with this case.

Cologne, J., and Staniforth, J., concurred.

A petition for a rehearing was denied March 24, 1977, and the opinion was modified to read as printed above.

---

defendant at least two days before sentencing, or (2) a hearing in open court on aggravating, or mitigating circumstances." (*In re Calhoun, supra,* 17 Cal.3d 75; 83.)