Filed 6/25/14  P. v. Wills CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RODNEY ALLEN WILLS,<br><br>    Defendant and Appellant. | C073028<br><br>(Super. Ct. No. SF119164A) |

A jury convicted defendant Rodney Allen Wills of two counts of attempted kidnapping (Pen. Code, §§ 664/207, subd. (a);[1] counts 1 & 3), and four counts of contacting a minor with the intent to commit a sex offense or kidnapping (§ 288.3, subd. (a); counts 2 & 4-6).  The jury also found defendant committed counts 2, 4, 5, and 6 with

---

[1] Further undesignated statutory references are to the Penal Code.

1

the intent to commit a kidnapping; an additional intent to commit a lewd act on a 14- or 15-year-old child by someone at least 10 years older (§ 288, subd. (c)(1)) for counts 5 and 6; an intent to commit a lewd act on a child under 14 (§ 288, subd. (a)) for count 2; and an intent to commit forcible rape (§ 261, subd. (a)(2)) for count 4. The trial court initially sentenced defendant to nine years eight months in state prison and later modified the sentence to eight years eight months.

On appeal, defendant contends there is insufficient evidence to support one of the kidnapping and all four of the unlawful contact counts. He further argues the trial court erred in imposing a concurrent term for counts 1 and 3 and then staying execution of the sentences pursuant to section 654. Disagreeing, we shall affirm.

## FACTS

*The People's Case*

*Tristen Doe*

On December 14, 2011, 16-year-old Tristen Doe was walking home from the bus stop after getting out of school at around 2:13 p.m. Defendant drove up very close to her in a green Honda. He stopped, rolled down the window, and asked Tristen if she wanted to get in the car. She declined and kept walking. Defendant revved the engine, moved the car forward, and told Tristen to "get in the fucking car."

Defendant looked as if he were about to open the car door when Tristen's next door neighbor, Cynthia Pendergast, brought her trash can out to the curb. Tristen saw Pendergast and called out her name. Defendant told Tristen, "Don't call her over here, bitch." Tristen told Pendergast, "Can you come over here, please?" When Pendergast looked at Tristen and came toward them, defendant told Tristen "man, fuck you" before driving away. Tristen wrote down the license plate number of defendant's car.

2

*Patrice Doe*

Between 2:00 and 3:00 p.m. that afternoon, 13-year-old Patrice Doe was walking when she saw a green Honda driven by defendant. Defendant asked Patrice her name, which she provided. Defendant asked Patrice where she lived, and she told him the north side. He asked whether she wanted to "kick it" at his apartment. Patrice declined, but defendant "forced" her to take a folded piece of paper containing his phone number. She did not want to go with him, but took his number because she was "scared" not to.

At some point, defendant grabbed Patrice's arm and tried to get her in his car. She jerked away from his grasp, ripping her sweatshirt in the process. She started to run away, but fell for a moment. Patrice looked back and saw defendant looking at her before he got into his car and drove off. She then ran all the way to school, where she called her mother and told her a man tried to grab her.

*Keeva and Anjuanune Doe*

That same afternoon, 14-year-old ninth graders Keeva and Anjuanune Doe were walking after school. As they crossed the street, they noticed a man driving slowly in a green car. The car drove off, but returned from around the block and pulled up as if it were going to stop. The girls tried to ignore the man; he caught their attention by nodding his head and making hand gestures telling them to come to the car. The girls responded by throwing rocks at the car. The man drove off.

*Uncharged Misconduct Evidence*

On November 7, 2011, 12-year-old Amanda Doe was walking home from school when she noticed a man in a green car driving slowly and staring at her while saying something she could not understand. She shook her head and kept walking. The man drove around and back to her a second and then a third time, staring and gesturing at her.

3

Amanda ran home and told her older sister. The two drove around to look for the car. They saw a four-door green Honda, which Amanda thought was the car that followed her. She believed that the man standing next to the car was the man who followed her.

*Other Evidence*

On December 14, 2011, at around 3:00 p.m., Stockton Police Officer Loreen Gamboa responded to a report of a car approaching a young female. Officer Gamboa met Tristen, who was crying and hysterical. She spoke to Tristen and a neighbor.

Gamboa received a similar report at 5:17 p.m. the same day regarding a car that matched the description police had been given. She drove to the location and found the car and the driver (defendant) detained. When Gamboa asked another officer what was going on, defendant said, "Is this about the underage girls I was talking to? I didn't do anything. I left."

Gamboa later met Patrice, who was afraid and appeared to have been crying. Patrice identified defendant and his car in a field identification. Tristen was also brought to the identification and identified defendant as well as his car. Anjuanune went to the identification; she identified defendant's car but was not sure defendant was the man. Keeva went to the identification and also identified defendant's car but was uncertain about defendant.

Defendant was interviewed by the police. He confirmed owning a dark green Honda Accord. He said that on the day of the incidents, he was driving to pick up his check at around 3:30 p.m. when he saw someone walking and "hit her up." The girl said she was picking up her sisters and visiting her mother; defendant said he wanted to talk to her later and asked for her number. She did not have a phone but said defendant could give her his number. She also agreed to go to his house and "kick it." Defendant, who thought the girl was 18 or 19 years old, gave her his number. He denied grabbing her or getting out of the car.

4

Asked to define "kicking it," defendant said it meant going to his house, watching television, getting to know each other, and "if it be something else, it'll be something else." "[S]omething else" meant sex; if a girl "feels" him like he "feel[s]" her, it will lead to sex. He admitted that regarding the girl he wanted to "kick it" with, he was hoping to have sex with her if she was of age. He did not know that any of the girls he contacted were underage and did not intend to force any of them to do anything.

Defendant was carrying unopened condoms in his wallet when he was arrested.

*The Defense*

Defendant testified that he attended to errands on the morning of the incidents, returned to his Stockton home for a nap, and then left at 3:00 p.m. to pick up his check from work. He thought the first female he encountered was at least 18. He followed her in his car to see who she was and to talk to her. He drove up close to her and said hello. She ignored him, but he kept talking to her and finally drove off when she "call[ed] out to some lady."

Defendant kept driving; at around 3:25 or 3:30 p.m., he saw Patrice. Thinking she was 18 or older, defendant drove up and said hello to her. When she walked to the passenger window of defendant's stopped car, defendant rolled down the window and conversed with Patrice, eventually asking her to "kick it" with him. Defendant asked for her phone number, but she did not have one, so he gave her his number which she accepted. He then drove to work. After leaving work and driving to various locations, at around 5:00 p.m., defendant met the two girls from the prior encounter. Defendant drove past them and said, "What's up, ladies?" He never stopped the car or waved the girls over. He did not see them throw any rocks. He testified that he understood the term "kicking it" to mean hanging out, watching movies, or going out to eat.

5

I

*Sufficiency of the Evidence*

Defendant contends there is insufficient evidence to support his convictions as to count 4 (unlawful contact with Tristen), count 3 (attempted kidnapping of Tristen), count 5 (unlawful contact with Anjuanune), and count 6 (unlawful contact with Keeva). We disagree.

In determining the sufficiency of the evidence, our role is limited.  Under the state and federal constitutional due process clauses, "the test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 667.)

A.  *Count 4*

Section 288.3, subdivision (a) states:  "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense."

The jury found defendant intended to commit two offenses in count 4, kidnapping (§ 207, subd. (a)) and forcible rape (§ 261, subd. (a)(2)).  Defendant claims there is insufficient evidence to support either finding.  He argues that the evidence shows no more than an intent to have consensual sex with Tristen, and does not indicate he intended to have forced intercourse with her.  He further asserts the evidence does not show an intent to kidnap Tristen because defendant did not touch Tristen, did not open

the car door, get out of the car, or block her path, and his "verbal 'insistence' was unaccompanied by any aggressive physical act."

Intent is " 'rarely susceptible of direct proof' " and instead " 'must usually be inferred from all the facts and circumstances disclosed by the evidence.' [Citations.]" (*People v. Falck* (1997) 52 Cal.App.4th 287, 299.) While there is no direct proof of intent, there is enough circumstantial evidence to infer the requisite intent. "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury. [Citation.]" (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Evidence of other charged or uncharged offenses is relevant to show intent or plan. (Evid. Code, § 1101, subd. (b).) Where, as here, all of the charged and uncharged acts followed a similar pattern, we can consider the evidence of all charged and uncharged acts as relevant to the intent as to each charged crime. (Cf. *People v. Jones* (2013) 57 Cal.4th 899, 925 [joinder of offenses not prejudicial to defendant where joined offenses shared a distinctive modus operandi, rendering the evidence of each crime cross admissible as to "intent, plan or identity"].)

Taken together, the evidence shows defendant wanted to have sex with these underage girls. The definition of "kicking it" defendant gave to the police indicated the hope of sexual relations with them. Defendant's intent to have intercourse with the girls is also supported by the unopened condoms he was carrying when he was arrested. The jury did not have to accept defendant's self-serving statements to the police and his testimony that he intended only consensual sex or a consensual meeting with the girls. Defendant's conduct towards Tristen and Patrice showed he intended to force the matter if the girls did not consent to his advances. Although defendant's demands to Tristen to

7

get in his car were not accompanied by any physical acts, any doubts regarding his intent were resolved by his attempt to pull Patrice into his car shortly after the incident with Tristen. (See *People v. Nye* (1951) 38 Cal.2d 34, 37-38, disapproved on other grounds in *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 876 [evidence of intent to rape shown by defendant's attempt to rape another woman in similar circumstances].)[2]

Rape is sexual intercourse with another person "against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).)

Defendant approached three sets of underage girls within a short time, demonstrated the desire to have sex with them, and manifested a willingness to force them into his car if necessary. Taken together, these facts support an inference that defendant intended to kidnap and rape Tristen if she did not willingly go with him. Substantial evidence supports defendant's conviction under section 288.3, subdivision (a) in count 4.

B. *Count 3*

Relying on the authorities cited in support of his claim regarding count 4, defendant claims there is insufficient evidence to support his conviction for attempted kidnapping of Tristen in count 3.

---

**2** In count 2, unlawful contact as to Patrice, the jury found defendant intended to commit kidnapping and lewd act on a minor under 14. The absence of a finding that defendant intended to rape Patrice does not preclude the jury from using evidence of the crimes against Patrice as evidence of an intent to rape Tristen because the jury was never asked whether defendant intended to rape Patrice.

Section 21a provides that "[a]n attempt to commit a crime consists of two elements:  a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."  As we previously discussed, there is substantial evidence that defendant harbored an intent to kidnap Tristen.  Defendant's attempt to order her into his car when she did not want to do so constitutes a direct but ineffectual act done towards the intended kidnapping.  Substantial evidence supports the conviction for attempted kidnapping in count 3.

C. *Counts 5 and 6*

Defendant also contends his convictions for unlawful contact with Anjuanune (count 5) and Keeva (count 6) must be reversed because there is insufficient evidence that he had an intent to commit kidnapping, or an intent to commit a lewd act on a 14- or 15-year-old.  As previously noted, the evidence of all the charged and uncharged offenses shows a common intent to have sex with the girls defendant contacted and an intent to kidnap them if necessary to achieve that goal.  His statement at his arrest, "Is this about the underage girls I was talking to?  I didn't do anything.  I left," indicates he knew the girls were underage.  Since the evidence supports an inference defendant intended to have sex with the underage girls and would kidnap them if provided the opportunity,[3] substantial evidence supports the convictions and special findings as to both counts.

II

*Section 654*

Defendant contends the trial court erred by imposing a concurrent term but staying execution of sentence for attempted kidnapping in counts 1 and 3.  Defendant agrees that

---

[3]  That the girls thwarted defendant from further approaching them by throwing rocks at his car did not prevent the jury from inferring that defendant harbored the same intent towards Anjuanune and Keeva that he had towards Patrice and Tristen.

9

punishment for those counts was correctly stayed pursuant to section 654, but asserts it was error to impose concurrent terms for counts stayed under section 654. He is wrong.

Defendant's contention is based on *People v. Alford* (2010) 180 Cal.App.4th 1463. In *Alford*, the defendant was convicted of second degree burglary and grand theft with a strike and two prior prison terms. (*Id*. at p. 1467.) The trial court sentenced the defendant on the burglary, strike, and prison priors, but stayed imposition of sentence for the grand theft count. *(Ibid.)* We held this was an unauthorized sentence. (*Id*. at pp. 1466, 1467.) Giving guidance to trial courts on how to implement section 654, we stated: "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment. [Citations.]" (*Id*. at. 1468.) We additionally recognized: "Nor is staying imposition of sentence an option. 'Upon conviction it is the duty of the court to pass sentence on the defendant and impose the punishment prescribed. [Citations.] Pursuant to this duty the court must either sentence the defendant or grant probation in a lawful manner; it has no other discretion.' [Citation.]" (*Ibid*.) Finding it would waste judicial resources to remand for resentencing, we modified the judgment to impose a two-year middle term for grand theft, doubled for the strike and an extra two years for the prison priors, for a six-year term stayed pursuant to section 654. (*Id*. at p. 1473.)

Defendant asks us to vacate the trial court's order stating the terms are to run concurrently. A trial court's duty to impose sentence for a term contains a corresponding mandatory duty to declare whether the term is concurrent or consecutive. (§ 669; *In re Calhoun* (1976) 17 Cal.3d 75, 79-80.) We do not read *Alford* as eliminating this requirement for counts subject to section 654. The trial court in *Alford* did not sentence the defendant on the grand theft count; it therefore did not have the opportunity to impose a concurrent or consecutive sentence on that count. Cases are not authority for propositions not therein considered. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

*Alford* holds only that imposition of a concurrent term by itself, without staying that term, does not satisfy section 654.  Here, there was no error.

### DISPOSITION

The judgment is affirmed.


      DUARTE      , J.


We concur:


      BUTZ      , Acting P. J.


      HOCH      , J.