[No. F006287. Fifth Dist. May 8, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN TRIBBLE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Facts and parts II through V.

**COUNSEL**

Deborah A. Vollmer for Defendant and Appellant.

John K. Van de Kamp, Attorney General, J. Robert Jibson and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, J.**—On January 25, 1985, the Kern County District Attorney filed five informations in superior court charging defendant as follows:

*Information No. 28617*: Count I*—receiving stolen property (Pen. Code, § 496);[1] counts II-IV—receiving or disposing of articles from which serial number or identification mark has been removed (§ 537e).

*Information No. 28618*: Count I—possession of cocaine for sale (Health & Saf. Code, § 11351); count II—possession of phencyclidine (PCP) (Health & Saf. Code, § 11377); count III—possession of narcotic paraphernalia

---

*For uniformity, we have referred to all counts in the five informations with Roman numerals.

[1] All statutory references are to the Penal Code unless otherwise indicated.

(Health & Saf. Code, § 11364); count IV—destroying or concealing documentary evidence (§ 135).

*Information No. 28619*: Counts I-II—receiving stolen property (§ 496).

*Information No. 28620*: Count I—possession of PCP (Health & Saf. Code, § 11377) while released on bail or recognizance (§ 12022.1); count II—possession of cocaine (Health & Saf. Code, § 11350) while released on bail or recognizance (§ 12022.1); count III—possession of cocaine for sale (Health & Saf. Code, § 11351) while released on bail or recognizance (§ 12022.1).

*Information No. 28621*: Count I—possession of PCP for sale (Health & Saf. Code, § 11378.5); count II—ex-felon in possession of a concealable firearm (§ 12021, subd. (a)).

Defendant pleaded not guilty to all of the charges in the five informations and, thereafter, the trial court granted the prosecution's motion for consolidation of all of the charges for trial.

On April 26, 1985, the superior court denied defendant's motion to dismiss information Nos. 28617, 28619 and 28620. On May 23, 1985, the court relieved Attorney Richard Fusilier as defense counsel in information Nos. 28617, 28619 and 28620. Defendant retained Attorney Ronald Dessy as defense counsel for all charges.[2] The court thereafter denied defendant's motions to sever, suppress evidence, dismiss the information, and quash certain search warrants.

On September 3, 1985, defendant withdrew his previous not guilty pleas and pleaded guilty to the first eight counts of the consolidated information, as follows: Count I—illegal possession of PCP for sale; count II—possession of a firearm by an ex-felon; count III—illegal possession of cocaine for sale; count IV—illegal possession of PCP; counts V and VI—receiving stolen property; count VII—illegal possession of PCP; and count VIII—illegal possession of cocaine. Defendant also admitted he committed the offense charged in count VIII while released from custody on his own recognizance in three other cases (§ 12022.1). The court dismissed the remaining counts (counts IX through XV) on the People's motion.

At the sentencing hearing, the trial court denied defendant probation and sentenced him to state prison for the aggregate term of six years. The court

---

[2]Attorney Dessy had been previously retained as defense counsel in information Nos. 28618 and 28621.

imposed the upper term of five years on count I (illegal possession of PCP for sale) and a consecutive upper term of four years on count III (illegal possession of cocaine for sale). The court stayed all but one year of the latter sentence until the completion of the sentence imposed in count I. The court imposed the upper term of three years on counts II and IV through VIII, and ordered them to run concurrently with the unstayed terms in counts I and III. The court struck the two-year enhancement in count VIII pursuant to section 1170.1, subdivision (h). The court also ordered defendant to register as a controlled substance offender (Health & Saf. Code, § 11590) and to pay a $100 restitution fine (Gov. Code, § 13967). On the same date, the trial court issued a certificate of probable cause (§ 1237.5, subd. (a)) pursuant to defendant's plea bargain with the prosecution.

Defendant filed a timely notice of appeal.

FACTS*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISCUSSION

I. *Law Enforcement's Interference With Appellant's Right to Counsel*

Defendant contends the trial court erroneously denied his motion to dismiss charges on the grounds law enforcement officials interfered with the attorney-client relationship between defendant and his previous attorney, Richard Fusilier.

On July 16, 1985, the Kern County District Attorney's office notified Attorney Richard Fusilier he had been the subject of a Bakersfield Police Department narcotics investigation and defendant had been assisting the police in their inquiries. The district attorney's office stated: "We are providing this information for any action you deem appropriate in connection with continued representation of Mr. Tribble." Attorney Fusilier had been relieved as counsel for defendant on May 23, 1985. At the August 29, 1985, hearing on motion to dismiss, defendant Tribble testified he began acting as a police informant shortly after his arrest in August 1984:

"BY MR. DESSY [defense counsel]:

"Q. Now, at what point in time were you requested to start assisting the

---

*See footnote * on page 1108, *ante.*

district attorney or law enforcement with information obtained regarding Mr. Fusilier?

"A. Like I said, it was, I think, back in August of '84. They wanted to know who in Kern County was receiving the drugs, and it took me a long time because I had to find out who Ralph was bringing it to, and I had to make real good friends with him.

"Q. You said 'Ralph'?

"A. Ralph Hollzinger, and they had me take pictures of him and the cars and get the license number of the cars he drove, and then at that time I was working. Ralph started trusting me and was bringing drugs into town and had me put it in garbage cans and phone booths so this is when I contacted the F.B.I. and said that I got in deeper than I wanted to go, and Kern County Sheriff's wouldn't let me off, and so he told me he would investigate, and to go along with them since I was already involved and I gave him the information that these drug dealers wouldn't let me right off the hook right then, and I didn't know what to do.

"I wanted to leave town, but I was in the bind, and they kept pressuring me to get the information who the drugs was coming to, so I found out who the drugs was coming to, and I related the information back to the sheriff's department, and they said that they had knowledge Mr. Fusilier was dealing in drugs, and they wanted me to bust it.

"Q. When did you actually start getting involved by providing information from Mr. Fusilier directly to the district attorney or law enforcement?

"A. Back when it first started, August of '84. I think it had to be August of '84 the second time they arrested me, so I did. I gave them all the information I had, and so then I had in January after I had talked to the F.B.I., got arrested again.

"Somebody planted drugs in the car I was in.

"Q. Are you referring to the December '84 arrest?

"A. Yes, sir. So then they told me they wanted me to go on working because I quit doing anything. I wouldn't talk to them, and he told me if I wanted to get out of all the cases I had, I would work, because they found four ounces of drugs in this Corvette belonging to me, and they wanted me to get Mr. Richard Fusilier, and they wanted me to go in his office with a tape on.

"I got real scared. I talked to the F.B.I. again, and they told me to do it.

"So, they put a tape on me one Sunday. I went in the office, and we set up a drug buy.

"Q. Let me ask you this. Your decision to cooperate with the district attorney in connection with taking pictures of Mr. Fusilier and going into his office with a tape-recorder, that type of thing, did that occur before or after the preliminary hearings around January 14 through 16, I believe?

"A. Before.

"Q. Are you certain of that?

"A. Yes, it was before Christmas . . . ."

Defendant further testified his life was threatened and he was unable to obtain witnesses for his trial because of his involvement with the Bakersfield police. Kern County Deputy Sheriff Thomas Ramos testified he was assigned to the "Detective Division, Narcotics Task Force." Ramos stated defendant Tribble offered to work off his various charges by turning in or informing on ordinary drug dealers. Defendant never mentioned turning in Attorney Fusilier or any other attorney and the sheriff's department was never involved in such negotiations. Walter Newport testified he was a Bakersfield Police Department detective assigned to the narcotics vice section during the time in question. Detective Newport met with the defendant in 1985 regarding the possibility of "working off a beef" involving contraband in the trunk of a Corvette. During their discussions, defendant Tribble mentioned he could turn in an attorney working in narcotics. Newport indicated defendant had his first conversation with the police department on March 1, 1985, and defendant had not mentioned Attorney Fusilier to the officers prior to that time.

Defendant contends on appeal he "was denied effective assistance of counsel, due to the interference by law enforcement with his attorney-client relationship with Mr. Fusilier. By using Appellant to investigate his own attorney to the point of setting up a 'drug buy', law enforcement created a conflict of interest between Appellant and his attorney, which deprived him of effective assistance of counsel. Appellant was also hindered in his ability to contact potential defense witnesses in his various pending cases. The conduct of the prosecution and law enforcement in this case was outrageous, and the damage to Appellant's Constitutional rights, irreparable.

"While the Appellant in the case at bar had an attorney, Mr. Fusilier, present to represent him at his preliminary hearing, Appellant was nonetheless denied effective assistance of counsel. Coerced by law enforcement into investigating the activities of his own lawyer, Appellant could hardly feel free to confide in him. Nor could Appellant be said to have waived his right to effective assistance of counsel by his cooperation with law enforcement in their investigation of Mr. Fusilier, since there could be no such knowing and intelligent waiver, absent effective assistance of counsel."

Pursuant to defendant's plea bargain with the prosecution, the trial court issued a certificate of probable cause on October 8, 1985, the date of sentencing. The claim of law enforcement interference with defendant's right to counsel, i.e., interference with the attorney-client relationship, was specifically alleged as a ground for appeal in defendant's application for certificate of probable cause.

The defendant in a criminal cause has a constitutional right to have the assistance of counsel for his defense. (Cal. Const., art. I, § 15.) This fundamental right to the aid of counsel applies also to preliminary examination and arraignment and is not obviated by a plea of guilty. (*People* v. *Avilez* (1948) 86 Cal.App.2d 289, 294-295 [194 P.2d 829].) Thus, defendant has properly preserved this issue for appeal. However, defendant Tribble must show he was deprived of a fair trial or otherwise suffered prejudice as a result of any police interference with his relationship with Attorney Fusilier. (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].)

Defendant contends the officers' invasion of his attorney-client relationship and the resulting infringement of his constitutional rights mandate dismissal of the charges against him.

The People respond defendant enjoyed the benefit of counsel at all times during the preliminary hearing. "His allegation that there was interference in the attorney-client relationship due to his own act is far from true. As a matter of fact, the record shows that on March 1, 1985, the date appellant had decided to turn in attorney Fusilier for narcotic activity, he had already been bound over for trial in the superior court for the instant crimes following preliminary hearings held on January 11 and 14 through 18 of 1985. . . . This being the case, it is difficult to see how appellant's act of informing on his lawyer, which came only after the conclusion of the preliminary hearing, could have affected his lawyer's performance at the time. Of course, appellant had insisted that he had spied on his attorney as early as August 1984. Obviously, the trial court did not believe him and instead gave more credence to Detective Newport's account that it was only starting

March 1, 1985, that appellant had discussed with the Bakersfield Police about turning in Mr. Fusilier."

■ When conduct on the part of the authorities is so outrageous as to interfere with an accused's due process of law, proceedings against the accused are thereby rendered improper. (*Rochin* v. *California* (1952) 342 U.S. 165, 172 [96 L.Ed. 183, 190, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *People* v. *McIntire* (1979) 23 Cal.3d 742, 748, fn. 1 [153 Cal.Rptr. 237, 591 P.2d 527].) Dismissal is occasionally used by the courts to discourage flagrant and shocking misconduct by overzealous governmental officers in subsequent cases. (*Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 759-760 [157 Cal.Rptr. 658, 598 P.2d 818]; *People* v. *Moore* (1976) 57 Cal.App.3d 437, 442-443 [129 Cal.Rptr. 279].) The People contend defendant acted as an informant against his own attorney on a matter that had nothing to do with his cases. They maintain there was no way defendant's act of spying on a matter entirely unrelated to his pending cases could have possibly interfered with his attorney-client relationship with Mr. Fusilier.

In *Barber* v. *Superior Court, supra,* 24 Cal.3d 742, petitioners were among 50 people who participated in a "sit-in" near the Pacific Gas and Electric Diablo Canyon Nuclear facility to demonstrate opposition to the use of nuclear power. Petitioners were arrested and each was charged with two counts of trespassing. All but two petitioners were also charged with one count of unlawful assembly. Prior to the trial date, petitioners learned one of the codefendants was an undercover police officer. Petitioners moved to dismiss on the grounds that presence of the agent at confidential attorney-client meetings had deprived them of their rights to the effective assistance of counsel and due process of law. At the hearing on the motion, defense counsel testified their clients had become very distrustful of one another and had been reluctant to speak out at defense meetings following the revelation of the undercover status of the officer. Counsel concluded defendants' ability to prepare and proceed with their defense had been substantially impaired. Counsel maintained the impairment had been caused by the use of the informant.

The trial court denied the motion on the grounds there had been no evidence showing information gained by the officer had been transmitted to the prosecution. However, the court ruled the People could not use any evidence the officer obtained from any meetings between counsel nor any fruits thereof. The court further ruled the People could not, in rebuttal to any evidence put forth by defendant, use any evidence whatsoever unless the prosecution could first prove beyond a reasonable doubt such evidence was obtained independently of the officer's activities.

The Supreme Court ordered the issuance of a writ of prohibition, holding the only effective remedy was dismissal of the underlying charges against defendants. The court held an accused must have the assurance of confidentiality and privacy of communication with his attorney to derive the full benefits of the right to counsel. To afford him those benefits, it is essential he be allowed to consult with his counsel not only during the actual trial, but prior to trial in order to prepare for his defense. The right of defense includes and carries with it the right of such freedom of action as is essential and necessary to make such defense complete. There can be no such thing as a legal trial unless both parties are allowed a reasonable opportunity to prepare to vindicate their rights. It necessarily follows it is the absolute right of parties charged with crime to confer privately with their attorneys. The right to counsel, which embodies the right to private consultation with counsel, is violated when a state agent is present at confidential attorney-client conferences. (See also *Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422 [233 Cal.Rptr. 487].)

The People contend *Barber* is distinguishable from the instant case because here the defendant acted as an informant against his own attorney on a matter unrelated to his cases.

In *United States* v. *Morrison* (1981) 449 U.S. 361 [66 L.Ed.2d 564, 101 S.Ct. 665], rehearing denied 450 U.S. 960 [67 L.Ed.2d 385, 101 S.Ct. 1420], defendant was indicted on two counts of distributing heroin. She retained private counsel to represent her in the impending criminal proceedings. A short time later, two drug enforcement agents sought to obtain her cooperation in a related investigation. The agents were aware of defendant's indictment and retention of counsel. They met and conversed with defendant without the knowledge or permission of her counsel. Further, the agents disparaged defendant's counsel and suggested she could be better represented by the public defender. In addition, the agents indicated defendant would gain various benefits if she cooperated but would face a stiff jail term if she did not. Defendant declined to cooperate and immediately notified her attorney. The agents visited defendant again in the absence of counsel but at no time did defendant agree to cooperate with them, incriminate herself, or supply any information pertinent to her case. She continued to rely upon the services of her retained counsel. Defendant later moved to dismiss the indictment with prejudice on the ground the agents' conduct violated her Sixth Amendment right to counsel. Defendant's motion did not allege the claimed violation prejudiced the quality or effectiveness of her legal representation. Nor did the motion assert the agents' behavior induced her to plead guilty, resulted in the prosecution having a stronger case against her, or had any other adverse impact on her legal position. The motion was based solely upon the egregious behavior of the agents which was described as

having "interfered" in some unspecified way with defendant's right to counsel. This interference, unaccompanied by any allegation of adverse effect, was urged as a sufficient basis for the requested disposition. The district court denied defendant's motion. The Court of Appeals disagreed and dismissed defendant's indictment. The United States Supreme Court reversed the judgment of dismissal.

The Sixth Amendment provides an accused shall enjoy the right to have the assistance of counsel for his defense. This right, fundamental to our system of justice, is meant to assure fairness in the adversary criminal process. ■ Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. For example, when the prosecution improperly obtains incriminating information from the defendant in the absence of his counsel before trial but after institution of adversary proceedings, the appropriate remedy is to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted. The Supreme Court's approach has been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. Absent some adverse effect upon the effectiveness of counsel's representation or some other prejudice to the defense, there is no basis for imposing a remedy in a criminal proceeding. Absent demonstrable prejudice or substantial threat thereof, dismissal of the indictment is plainly inappropriate even though the violation may have been deliberate. The remedy in a criminal proceeding is limited to denying the prosecution the fruits of its transgression.

In *Morrison,* the defendant demonstrated no prejudice of any kind, either transitory or permanent, to the ability of her counsel to provide adequate representation in the criminal proceedings. There was no effect of a constitutional dimension which needed to be purged to make certain the defendant had been effectively represented and fairly convicted. The Sixth Amendment violation, if any, provided no justification for interfering with the criminal proceedings against defendant Morrison much less the drastic relief granted by the Court of Appeals. In arriving at this conclusion, the Supreme Court did not condone the egregious behavior of the government agents. Nor did the court suggest a Sixth Amendment violation may not be remedied in other proceedings. The court simply concluded the solution provided by the Court of Appeals was inappropriate where the violation had no adverse impact upon the criminal proceedings.

■ Defendant Tribble contends he was denied the effective assistance of counsel due to law enforcement interference with his attorney-client rela-

tionship with Mr. Fusilier. "By using Appellant to investigate his own attorney to the point of setting up a 'drug buy[,'] law enforcement created a conflict of interest between Appellant and his attorney, which deprived him of effective assistance of counsel. Appellant was also hindered in his ability to contact potential defense witnesses in his various pending cases.

In our view, defendant's contention must be rejected upon the record before us.

Defendant challenged the police interference in a motion to dismiss the information. (§ 995.) After contested hearing, the trial court denied defendant's motion. ■ On review of a denial of a section 995 motion, the appellate court will review the evidence in a light most favorable to the order and will uphold the findings as long as they are supported by substantial evidence. On appeal it is to be assumed the magistrate impliedly found every fact necessary to support its ruling to be true. (*People* v. *McCoy* (1974) 40 Cal.App.3d 854, 861 [115 Cal.Rptr. 559].) On review, every legitimate inference which can be drawn in favor of the information must be; and if the appellate court finds some evidence to support the commitment, it cannot inquire into the sufficiency of the evidence. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 38-39 [121 Cal.Rptr. 269].)

■ On review, this court may draw the following legitimate inferences to support the denial order: (1) defendant Tribble initiated contacts with the Bakersfield Police Department on or about March 1, 1985; (2) defendant sought to reduce his potential punishment by "working off a beef"; (3) defendant willingly participated in a narcotics buy attempt involving his then counsel, Richard Fusilier; (4) Attorney Fusilier sought to withdraw as defense counsel on May 13, 1985, due to a calendar conflict, i.e., Fusilier was then engaged in a jury trial estimated to last at least one more month; (5) the superior court relieved Attorney Fusilier on May 23, 1985, and Attorney Dessy, who was already representing defendant in two pending cases, was retained to defend on all the cases; and (6) on July 16, 1985, the Kern County District Attorney's office notified Attorney Fusilier he had been the subject of a Bakersfield Police Department narcotics investigation and defendant Tribble had been assisting the police in their inquiries. We must further conclude, in light of the trial court's ruling, it did not believe defendant's testimony he had spied on his own attorney as early as August 1984, but rather accepted that version of events as testified to by Detective Newport.

In view of these reasonable inferences, defendant has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of his counsel to provide adequate representation in these criminal proceedings or

adverse interference with such representation. Defendant was represented by counsel throughout the time period in question. Any interference in the attorney-client relationship between defendant and Fusilier was attributable to defendant's decision to foresake the assistance of counsel and talk to police regarding the possibility of "working off a beef" by "turning" his own attorney. Shortly thereafter, Attorney Fusilier was replaced by retained counsel of defendant's choice who ultimately negotiated a very favorable plea bargain for defendant. Thus, we conclude defendant suffered no prejudice as a result of police interference, if any, in the attorney-client relationship with Richard Fusilier. Defendant's contention must be rejected.

II.-V.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment of conviction is reversed as to all counts for the reasons set forth in part III.B. of this opinion. The matter is remanded for retrial, except as to counts V and VI, or such other disposition as may be agreed upon by the parties.

Franson, Acting P. J., and Best, J., concurred.

---

*See footnote * on page 1108, *ante.*