[No. F007726. Fifth Dist. Apr. 5, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN DOUGLAS HAYES, Defendant and Appellant.

402

**COUNSEL**

Ronald A. Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edmund D. McMurray and Jane L. Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**ARDAIZ, J.**—Appellant Melvin Douglas Hayes was charged in a series of five informations with multiple counts of possession of stolen property (Pen. Code, § 496);[1] possession for sale of amphetamines (Health & Saf. Code, § 11378); misdemeanor possession of items with the manufacturer's serial number removed (§ 537e); and possession of amphetamines (Health & Saf. Code, § 11377). Several of the counts also included allegations that the offense was committed while appellant was out on bail (§ 12022.1). The cases were consolidated and the People filed an amended 16-count information. The final count, relating to possession of amphetamines was severed. Appellant pleaded not guilty to the remaining counts and denied the allegations. The trial court bifurcated the issue of whether appellant was on bail when the offenses were committed and, just prior to trial, granted the People's motion to dismiss one count of possession of stolen property.

A jury trial was had on the remaining 14 counts. Prior to submission to the jury, yet another possession of stolen property count was dismissed. The jury returned guilty verdicts on the five misdemeanor counts, three of the receiving stolen property counts and on one possession for sale of methamphetamine count. The jury found appellant not guilty of three receiving stolen property charges and one count of possession of methamphetamine. Appellant waived his right to a jury trial on the enhancement allegations which the trial court subsequently found true.

The trial court sentenced appellant to prison for a total term of eight years.[2] Appellant filed a timely notice of appeal.

Appellant's sole claim on appeal is that the trial court erroneously denied his motion to dismiss based upon denial of due process and denial of his Sixth Amendment right to counsel.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] In his appeal appellant attacked the propriety of this sentence based upon a claimed violation of the double-the-base-term limitation of section 1170.1, subdivision (g). In an unpublished opinion this court in *In re Hayes,* F008698, filed November 5, 1987 (mod. Nov. 12, 1987), granted habeas corpus relief on the basis of this claim. The issue on appeal is therefore moot.

## FACTS

On November 3, 1984, appellant was arrested and charged with possession of drugs and stolen property. He retained Attorney S. as his attorney. Over the next several months appellant apparently was in and out of jail. On May 2, 1985, three separate informations were filed against appellant. Attorney S. appeared as his attorney in all three cases.

On May 22, 1985, two sheriff's deputies, Porter and Lacertoso contacted appellant while he was in custody in the jail. Those officers testified at the hearing on the motion to dismiss. In a declaration attached to his motion, appellant claimed: "Towards the end of May, 1985, I was approached by Kern County Sheriff's Department detectives Rocky Lacertoso and Craig Porter. They offered me a deal. The deal was that if I would set up either my present attorney, [Attorney S.], or an individual [another named individual], they would drop all pending charges against me. I agreed to do this, and it was my understanding that they would get in touch with me when they wanted me."

Officer Lacertoso testified that he initiated the conversation with the defendant. He knew, prior to talking with appellant, that he had cases pending against him. He explained: "I had information from several informants that [Attorney S.] was heavily involved in narcotics. At that time I wished to try and work some type of investigation where I could subsequently place him under arrest. I felt that possibly Mr. Hayes could provide me with that necessary information.

". . . . . . . . . . . . . . . . . . . . . .

"Our discussion was that if we could target the two individuals, [Attorney S.] and [J.I.], that I could go to the District Attorney's Office, and with their approval, some type of agreement or consideration could be made for his cases."

When asked whether he knew appellant was represented by Attorney S., Lacertoso claimed: "I believe I knew he was his attorney on a prior case, but as of that time, I was not sure who his attorney was, if he even had one at that time." He made no effort to determine whether appellant was represented and, if so, by whom. The record reveals a dispute as to the specifics of the "agreement" between the officers and appellant. In any event, appellant's bail was $265,000 prior to speaking with the officers. After speaking with the officers, the bail was reduced substantially, although Lacertoso explained that it was still high enough that appellant would be pursued if he

fled the jurisdiction. Appellant was released from custody the next day. There is no indication that the district attorney's office was contacted.

Within two weeks appellant contacted Lacertoso by telephone. Lacertoso stated that appellant did not "provide me with any necessary information that I could use." This was the only contact prior to August 26, 1985.

On July 29, 1985, Attorney S. filed a motion to be relieved as counsel of record. The motion was granted on August 6, and on August 13 the public defender was appointed to represent appellant. On August 27, appellant secured the services of another retained attorney.

On August 26, appellant was back in jail. The events of August 26 are disputed; however, Detectives Lacertoso and Porter again met with appellant. Appellant reported that Attorney S. believed he was working as an informant and he could not get anything useful on him. Appellant was told to concentrate on the other individual and was released from custody the next day, according to Porter, under section 849, subdivision (b)(1). Appellant was arrested by Porter a few days later.

On September 25 and October 2, 1985, two more informations were filed against appellant and ultimately consolidated with the three other pending cases. On November 26, the court relieved appellant's attorney because of a scheduling conflict and another attorney became appellant's counsel. On January 27, 1986, appellant filed a motion to dismiss based upon the conduct of the officers, claiming a denial of due process and interference with his Sixth Amendment right to counsel.

The trial court denied the motion to dismiss, stating: "The motion to dismiss is denied as the defendant's seven cases occurred before any alleged misconduct took place between Deputies Lacertoso and Proter [sic]."

The inquiry before this court extends into the most fundamental of relationships existent in our justice system—the relationship between attorney and client. While it is, perhaps, unnecessary to detail, ours is a system that places the responsibility to speak for the state or for the accused in the hands of attorneys cast in an adversarial role. An individual who is confronted with an accusation by the state finds himself confronted by "the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." (*Kirby* v. *Illinois* (1972) 406 U.S. 682, 689 [32 L.Ed.2d 411, 417-418, 92 S.Ct. 1877]; see also *Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422, 430 [233 Cal.Rptr. 487].) "The purpose of the appointment of counsel is to ensure that the accused 'not be

left to his own devices' when confronting these forces." (*Ibid.; Moran* v. *Burbine* (1986) 475 U.S. 412, 430 [89 L.Ed.2d 410, 427, 106 S.Ct. 1135].)

It is in this context that we examine the issues before us: Was there a violation of appellant's Sixth Amendment right to counsel and, if so, is there a remedy?

### Violation of Appellant's Sixth Amendment Right to Counsel

■ "The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice." (*Maine* v. *Moulton* (1985) 474 U.S. 159, 168-169, fn. omitted [88 L.Ed.2d 481, 491, 106 S.Ct. 477, 483].) While the right to counsel has continued to evolve to accommodate a complex society, "[w]hatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him. . . ." (*Brewer* v. *Williams* (1977) 430 U.S. 387, 398 [51 L.Ed.2d 424, 436, 97 S.Ct. 1232].)

In the instant case, it is unchallenged that proceedings had been initiated against appellant at the time officers first contacted appellant for purposes of discussing and/or negotiating an agreement concerning appellant's cooperation in their investigation. It is also uncontroverted that at the time the officers contacted appellant on May 22, 1986, he was represented by an attorney in the cases for which he was in custody at that time and the record reflects that this attorney had represented appellant in court on his pending cases. It is further undisputed that the discussions that were entered into with appellant concerning his cooperation were done without his attorney being present and without any inquiry by the law enforcement officers involved as to whether or not appellant was represented by an attorney. The proposed focus of appellant's cooperation was, in fact, the attorney who currently represented appellant at the time of the officers' contact with him.

The testimony is in conflict as to whether a "deal" was made between the detectives and appellant concerning his cooperation or the extent of his cooperation. In this regard, the trial court made no finding.[3]

---

[3] While Lacertoso vehemently denied he made a "deal" with appellant, it appears that at the very least there was an understanding that if appellant provided satisfactory information, Lacertoso would speak with the district attorney about the current charges. Lacertoso explained the general process:

"It depends on the pending cases that an individual has against him, as far as seriousness, before we work with a person prior to contacting the district attorney, we more or less have a

Regardless of the interpretation placed upon the conversation and its consequences by the parties, it is clear that law enforcement officers entered into a negotiation with appellant, who was represented by an attorney, and the negotiation included consequences with respect to the charges upon which appellant was represented. Viewed in the light most favorable to the People, the officers in question made no inquiry as to whether appellant was represented by an attorney. The trial court made no finding as to whether the officers had reason to believe he was in fact represented by an attorney.[4] We determine that this finding is pivotal to the ultimate determination of this case.

■ "Once the right to counsel has attached and been asserted, the State must of course honor it. This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek this assistance." (*Maine* v. *Moulton, supra,* 474 U.S. at pp. 170-171 [88 L.Ed.2d 481, 492, 106 S.Ct. 477, 484-485].)

In *Michigan* v. *Jackson* (1986) 475 U.S. 625 [89 L.Ed.2d 631, 106 S.Ct. 1404], the Supreme Court was called upon to assess the Sixth Amendment rights of a defendant who had been arraigned, requested counsel and subsequently was interrogated. The state argued that there was no violation of the defendant's right to counsel if the police did not know of the defendant's request for an attorney at the arraignment. In holding the distinction unavailing, the court stated: ". . . Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of defendant's unequivocal request for counsel to another state actor (the court)." (*Id.* at p. 634 [89 L.Ed.2d at p. 641].)

■ In accord with *Michigan* v. *Jackson,* we hold that where a defendant is *represented* by an attorney he is entitled to no less Sixth Amendment protection than a defendant who simply *requested* an attorney. For purposes of the Sixth Amendment, law enforcement officers will be assumed to know that a defendant is represented by counsel in a case to the same extent as the court is aware that the accused is represented. "Studied ignorance"

---

free hand when we have charges against an individual that are not major; if they're major charges, we definitely contact the district attorney's office prior to even allowing them to be released from custody."

[4] According to one of the officers, it can be inferred that it was merely coincidental that the attorney that they were investigating was also the attorney for appellant.

generated by a failure to inquire will not be treated as equivalent to innocent or blameless conduct by law enforcement officials.

Since it is undisputed that appellant was represented by Attorney S. at the time of his arraignment and during the time he was contacted, we must impute the court's and the district attorney's knowledge to the officers. It is, therefore, appropriate for us to set forth the respective rights and responsibilities of the parties where the officers know or, as we have explained, are assumed to know, that an accused is represented by counsel.

■ Where an individual is represented by counsel, the relationship between him and the state is dictated by the constitutional protections of the Sixth Amendment. "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." (*Maine* v. *Moulton, supra,* 474 U.S. at p. 176 [88 L.Ed.2d at p. 496, 106 S.Ct. at p. 487].)

In this regard, the attorney plays a vital role, not just as a voice for an accused but as an agent "through which the demands and commitments of the sovereign are communicated to the citizen." (*Brewer* v. *Williams, supra,* 430 U.S. at p. 415 [51 L.Ed.2d at p. 447]; Stevens, J., conc.) While it may be a matter of controversy as to whether "plea bargaining" is a necessary part of the criminal justice system, it is a reality of the system. " 'The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney.' [Citation.]" (*People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].)

It is evident that in a system wherein the negotiating process plays such a major role that, as they would in any negotiating process, the experience, acumen and leverage of each side's representative is of paramount importance to the final agreement. It does not take any breadth of imagination to recognize the advantage that an experienced attorney or police detective may have in the negotiating process as opposed to an individual accused of a crime. Where a defendant is represented by counsel at the time of negotiations concerning his case, the state may not exploit this advantage by circumvention of the defendant's counsel without a violation of the defendant's Sixth Amendment rights.

"[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." (*Maine* v. *Moulton, supra,* 474 U.S. at p. 176 [88 L.Ed.2d at p. 496].)

While the defendant might be no better off if his attorney negotiated for him or, perhaps, might even be worse off, the defendant is "entitled to have him try." (*People* v. *Moore* (1976) 57 Cal.App.3d 437, 442 [129 Cal.Rptr. 279].)

In the instant case, appellant's counsel was the focus of the negotiation for cooperation. Had the focus been a third party our conclusion would be that negotiation in circumvention of appellant's counsel was in derogation of his Sixth Amendment rights. Our conclusion does not differ simply because appellant's attorney was the "focus." The disadvantage of appellant's position remains the same in either circumstance. "[T]he prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." (*Maine* v. *Moulton, supra,* at p. 171 [88 L.Ed.2d at p. 493].)

To paraphrase Justice Douglas in *Spano* v. *New York* (1959) 360 U.S. 315 [3 L.Ed.2d 1265, 79 S.Ct. 1202]: to a represented defendant what use is the right to counsel at every stage of a criminal case if, while he is awaiting trial, the state can directly negotiate the case with the accused until he agrees to a disposition?[5] In the context of a negotiation as to disposition, when the state knowingly chooses to negotiate directly with a represented defendant on the case he is represented on, the state is seizing an opportunity in violation of the defendant's Sixth Amendment right to counsel.

### *Remedy*

Appellant contends that where a defendant's Sixth Amendment right to counsel has been violated by negotiation directly with a represented defendant such conduct "shocks the conscience" and compels a dismissal. (*Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396].) Appellant maintains that *Boulas* v. *Superior Court, supra,* 188 Cal.App.3d 422 is determinative of the issue of sanction or remedy under circumstances such as these.

In *Boulas,* the defendant, while represented by counsel, contacted law enforcement officials with a proposal concerning his case in exchange for cooperation. Boulas's attorney was not informed of this contact. Boulas was informed that "a deal could only be made if Boulas were to replace Attorney S. with counsel who would be acceptable to the district attorney." (*Id.* at p. 426.) Shortly thereafter, Boulas fired Attorney S. without disclosing the reason he was discharging him. Ultimately, contact was made with

---

[5] "[W]hat use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" (*Spano* v. *New York, supra,* at p. 326 [3 L.Ed.2d at p. 1273], Douglas, J., conc.)

Attorney C. who Boulas had been led to believe would be acceptable to the authorities. (*Id*. at p. 427.) Attorney C. refused to represent Boulas on the basis of his being an informant. Left without counsel, Boulas continued to work with authorities until he was told that an agreement with authorities was no longer possible. Boulas eventually rehired Attorney S. without telling him of his police contacts. Several months later, Boulas substituted another attorney, told him of his contacts with law enforcement and a motion was made to dismiss the case for interference with the defendant's Sixth Amendment right to counsel.

The *Boulas* court found an intentional subversion of the defendant's right to counsel. The court considered the fact that the law enforcement officers involved actively attempted to remove Attorney S. from the case and they did this with the cooperation and active involvement of the district attorney. They further found that the officers' exclusion of Attorney S. from the negotiation process denied Boulas the right to have his counsel attempt to obtain a negotiated disposition. Seizing upon the intentional subversion of the attorney-client relationship, the court in *Boulas* stated: "The remedy of exclusion of evidence is inadequate in instances of intentional subversion of the attorney-client relationship by governmental agents. 'An exclusionary remedy is not only ineffective as a deterrent, but the problems of proof inherent in the remedy when applied to violations of the right to counsel would be inadequate to assure that the prosecution does not benefit from the illegality.' [Citation.]

"The intentional undermining of an individual's right to counsel of his own choosing cannot be countenanced under any rational standard of justice. [Citations.] It is the duty of the judiciary to ensure that an accused's constitutional rights be protected in every case. [Citations.]

"No relief, such as suppression or reversal of conviction, would remedy the violation. Furthermore, considering the extent and seriousness of the conduct of those in positions of authority and public trust, we find the grave sanction of dismissal to be the sole appropriate remedy for intentional and calculated violation of Boulas's rights. We find the government conduct in the present matter to be outrageous in the extreme, and shocking to the conscience; we are, thereby, compelled to order the dismissal of the present case." (*Id.* at p. 434.)

In concluding that dismissal was the appropriate remedy, the *Boulas* court carefully considered *United States* v. *Morrison* (1981) 449 U.S. 361 [66 L.Ed.2d 564, 101 S.Ct. 665].

In *Morrison,* the defendant retained private counsel to represent her in an impending criminal proceeding. Two agents of the drug enforcement

agency, aware that she had been indicted and had retained counsel, met with her in order to obtain her cooperation in a related criminal investigation. The federal agents met with the defendant without the knowledge or permission of her attorney. During the course of the discussions, the agents disparaged the defendant's attorney and suggested that she should consider finding another counsel. The agents informed the defendant of the benefits she would gain if she cooperated and that she would face a stiff jail term if she did not cooperate. The defendant declined to cooperate and immediately notified her attorney. The agents again visited the defendant in the absence of her attorney and made the same overtures. At no time did the defendant agree to cooperate with them, or supply to them any information concerning her case or incriminate herself in any manner. She continued to rely upon the services of the attorney she originally had hired. The defendant moved to dismiss the indictment on the grounds of violation of her Sixth Amendment right to counsel. The lower court concluded that the defendant's ". . . Sixth Amendment right to counsel had been violated and that *whether or not any tangible effect upon respondent's representation had been demonstrated or alleged, the appropriate remedy was dismissal of the indictment with prejudice.*" (*Id.* at p. 363 [66 L.Ed.2d at p. 657], italics added.) In reversing, the Supreme Court stated: "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." (*Id.* at p. 364 [66 L.Ed.2d at p. 568].)

In analyzing other cases where there was a violation of right to counsel, the court noted that their remedy analysis was consistent with past positions they had taken. "Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.

"*More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.*" (*Id.* at p. 365, fn. omitted [66 L.Ed.2d at pp. 568-569]; italics added.)

In light of *Morrison,* it is evident that not all violations of an individual's Sixth Amendment rights result in an automatic determination of

prejudice or the imposition of a remedy or sanction. A finding of prejudice is necessary before a remedy is applied or a sanction is imposed. Thus, a violation of the Sixth Amendment does not, of itself, provide justification for interfering with the criminal process absent a demonstration that the Sixth Amendment violation "threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." (*Ibid.* [66 L.Ed.2d at p. 568].)

■ We have determined above that a defendant's Sixth Amendment right to counsel is violated where governmental agents initiate contact and negotiate an agreement directly with a defendant who is represented, concerning the case in which he is represented.[6] However, absent a defendant's assent and his attempt to comply with that agreement in good faith, we fail to see what prejudice may have accrued to the defendant. This does not mean that, under appropriate circumstances, a court would not be justified in determining that contact by law enforcement officers in and of itself may have diminished the effectiveness of the attorney's representation or irreparably torn asunder the attorney-client relationship warranting a finding of prejudice.[7] It does mean that if a defendant goes forward in good faith and attempts to comply with an agreement that is less than what counsel reasonably could have negotiated for him, he has been prejudiced.

By excluding the attorney, the People have enhanced their negotiating position and taken advantage of the defendant stripped of his trained representative. Simply to give the defendant the benefit of his bargain would be to give the People the benefit of their violation and would serve neither fundamental fairness nor the interests of the court in setting an example by that which it allows.

Thus, we cannot and we do not find that simply giving the defendant the benefit of his bargain is sufficient to redress the circumvention of his counsel without consideration of the benefit counsel may have afforded him.

We cannot ascertain with hindsight or certainty what benefits the defendant might have acquired by having his attorney involved in the negotiating process. However, "the sanction of dismissal is clearly discretionary and is only required in particularly egregious cases." (*People* v. *Truer* (1985) 168 Cal.App.3d 437, 443 [214 Cal.Rptr. 869].) We, therefore, decline a per se rule of dismissal under the circumstances that we have defined. We are mindful, however, that because of the actions of the state, we are confronted

---

[6] We note that a distinguishing factor may exist where the accused and not the government initiates the contact. (See *People* v. *Tribble* (1987) 191 Cal.App.3d 1108 [236 Cal.Rptr. 733].)

[7] We do not feel called upon to address the circumstances raised in *Boulas* wherein there was an intentional effort to subvert the attorney-client relationship.

with a situation where the remedy is, to an extent, speculative though the need to deter is obvious.

The court must consider in evaluating a sanction the impact that the sanction would have on the interests of justice and the reasonable expectations of the community. "[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." (*United States* v. *Morrison, supra,* 449 U.S. at p. 364 [66 L.Ed.2d at p. 568].) In striking the balance between the need to deter and the necessity of a remedy, we determine that it is reasonable to infer that had an attorney been involved in the process the attorney would have negotiated the best possible consequence for his or her client. The best possible consequence is to be determined objectively, as the most favorable bargain which might reasonably have been negotiated under the circumstances. It is only through this determination that the court can ascertain what loss the defendant has suffered through the circumvention of counsel.

Most often the best possible consequence of a negotiated agreement would be a dismissal of the charges. As our goal is not only to remedy any prejudice suffered by the defendant, but to deter illegal police conduct we find that dismissal should be presumed to be the normally reasonable consequence of an agreement such as the one herein. However, the People may rebut this presumption, under a proper evidentiary showing, by establishing objectively that some lesser consideration than dismissal would have been the most favorable bargain which might reasonably have been negotiated under the circumstances.[8] If such is the case, then such should be the benefit to the extent it is greater than the benefit conferred by the agreement. This balance we believe best promotes deterrence while protecting against a "windfall" for the defendant. While the defendant should not be prejudiced by the improper action of law enforcement, neither should he unjustly profit from it.

The judgment is reversed and the case remanded for a determination as to whether appellant attempted in good faith to carry out the agreement. (See *People* v. *Bustamante* (1981) 30 Cal.3d 88, 103 [177 Cal.Rptr. 576, 634 P.2d 927], and cases cited therein.) If the trial court finds appellant did not make a good faith attempt to comply with the agreement, then the trial court is ordered to reinstate the judgment in its entirety by rearraigning appellant and pronouncing judgment anew. (*People* v. *Collins* (1986) 42 Cal.3d 378, 392 [228 Cal.Rptr. 899, 722 P.2d 173].) If the trial court finds appellant did make a good faith attempt to comply with the agreement, it

---

[8] We reject the People's suggestion in their petition for rehearing that we be guided solely by the district attorney's representation that she would not have worked out a "deal" with appellant.

should then further determine which counts were the subject matter of the agreement. Finally, the court must determine what remedy is appropriate for those affected counts under the standards set forth above. As to any counts unaffected by the violation, the trial court is ordered to reinstate the judgment.

Martin, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied April 29, 1988.