[Nos. A039920, A040394. First Dist., Div. Two. May 19, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES CALLAWAY SHAW et al., Defendants and Appellants.

**COUNSEL**

Arlene West and Jack C. Hamson for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Joyce E. Hee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, J.**—Appellants Catherine Denise Berkland and James Calla-way Shaw entered pleas of guilty to various drug offenses, after the trial court denied their motions to suppress evidence seized at their residence pursuant to a search warrant. They contend that (1) the failure to suppress the evidence was erroneous; (2) the charges against them should have been dismissed as a result of outrageous government conduct occurring after their pleas of guilty, because the arresting officer wrote a letter to the trial court urging that a severe sentence be imposed, and the arresting officer continued to investigate and engage in "harassment" of appellants after their pleas; (3) they should have been allowed to withdraw their guilty pleas and conduct an evidentiary hearing on the government misconduct allegations; and (4) they were denied due process because they were not allowed to cross-examine the probation officer about her presentence report. We find no merit in these contentions and affirm.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Jack Allard, a government informer, telephoned appellant Shaw on April 1, 1986, and arranged to buy one-sixteenth of a gram of "crank" for $125. Allard had made similar buys from Shaw in the past and had also sold him marijuana in the past. Shaw told Allard to meet him at the Burger King in Ukiah. Allard went to the rendezvous with a plainclothes police officer. Shaw asked who the officer was, and Allard said the officer was his partner. Allard asked if Shaw had "it," and Shaw handed him a small plastic bag. Allard then handed $125 to Shaw.

Allard turned the bag over to the officer. It was found to contain meth-amphetamine. Allard received $30 from the police after the sale, and another $300 after Shaw was arrested a few days later.

Next, Officer George Torres prepared a 15-page affidavit to support the issuance of a search warrant for the residence of Shaw and Berkland. On April 5, 1986, he executed the warrant together with other officers.

The officers knocked, and Berkland asked who was there. An officer replied, "It's Bob"; and Berkland opened the door a few inches. The officers stated that they had a search warrant. Berkland tried to slam the door, but the officers pushed their way inside.

Torres saw Shaw running away carrying something in his hand. The officers, impeded by Berkland, chased Shaw, who ran into the bathroom and locked the door. The officers pulled the door open and saw Shaw

standing by the sink washing out a plastic bag. Plastic bags lay "all over the place" on the floor of the bathroom; the toilet was still in the process of flushing; and there was a white powder in the sink and toilet bowl, later determined to be methamphetamine. There was "a long trail of coin bags," used "to package methamphetamine," leading from the place where Shaw had first been spotted into the bathroom.

The officers found quantities of marijuana, psilocybin mushrooms, hashish oil, a trace of cocaine, methamphetamine, packaging materials, scales, $4,000 in cash, a scanner used for monitoring police radios, a set of brass knuckles, and a "zip" gun (a firearm not immediately recognizable as such) in the residence.

Shaw was charged with sale of methamphetamine, possession for sale of methamphetamine, possession for sale of psilocybin, possession of cocaine, possession for sale of marijuana, possession of concentrated canabis, possession of brass knuckles and the "zip" gun, and destruction of evidence. Berkland was charged with all of the above crimes except sale of methamphetamine, possession of the weapons, and destruction of evidence; she was also charged with obstructing a police officer.

Appellants pleaded not guilty and filed motions to suppress the evidence seized from their residence, which were denied. On January 16, 1987, appellants entered pleas of guilty. Shaw pleaded guilty to all the charges except the charges of sale of methamphetamine and destruction of evidence. Berkland pleaded guilty to simple possession of methamphetamine, psilocybin, and cocaine. The remaining charges against both appellants were dismissed.

Two months later, the sentencing hearing was continued at appellants' counsels' request when the trial court informed them that the arresting officer, Torres, had written a letter to the court urging that appellants receive a severe sentence. When the matter was again heard on April 8, 1987, appellants sought to cross-examine the probation officer, who was at home recovering from surgery; and they announced their intention to file motions relating to Torres's letter. On April 22, 1987, appellants requested that the trial court, the Honorable James Luther, disqualify himself; and on April 24, 1987, appellants filed a motion to dismiss for outrageous government misconduct based upon Torres's letter, and his alleged harassment of appellants and their associates after appellants entered pleas. The request for disqualification of the trial court was granted on April 28, 1987.

When the matter was called for hearing again on May 7, 1987, the Honorable Timothy O'Brien informed appellants' counsel that he had been assigned by the Judicial Council to replace Judge Luther, and that he was

ready to hear the motions to dismiss. Appellants were not ready to proceed; and the court, therefore, dismissed the motions without prejudice for failure to prosecute. Judge O'Brien indicated that the proper procedure would be for appellants first to move to withdraw their guilty pleas, and he gave appellants time to file those motions. Appellants subsequently made motions to withdraw their pleas and to dismiss the charges, which were argued and denied on August 21, 1987. The court opined that there was no reason to allow withdrawal of the pleas; that the letter sent by Torres, while "not proper," was irrelevant to the merits of the case; and that no prejudicial misconduct sufficient to justify dismissal had been shown. On September 17, 1987, the court heard Shaw's motion to cross-examine the probation officer and denied it. The court then sentenced Shaw to a total term of two years and eight months. At the same hearing, Berkland was granted probation on the condition that she serve one year in jail. Appellants timely appealed.

## II. DISCUSSION

### A. *The Motion to Suppress*

■ Appellants contend, first, that the trial court erred in denying their motions to suppress evidence seized at their residence pursuant to a search warrant. The trial court did not err. The affidavit in support of the issuance of the warrant recounts at great length the allegations of numerous tipsters that Shaw was dealing in drugs from his residence, as well as the circumstances of his drug sale to Allard observed by a police officer. The affidavit amply established probable cause to believe that illegal drugs would be found at appellants' residence. (See *People* v. *Mayer* (1987) 188 Cal.App.3d 1101, 1115-1120 [233 Cal.Rptr. 832]; *People* v. *Love* (1985) 168 Cal.App.3d 104, 111 [214 Cal.Rptr. 483].) "Since we conclude that there was a substantial basis for the . . . determination of probable cause, we need not consider the officer's good faith reliance on the warrant," which could also render the seizure of evidence valid. (*People* v. *Love, supra,* 168 Cal.App.3d at p. 111, fn. 3.)

We affirm the trial court's denial of appellants' motion to suppress.

### B. *The Motion to Dismiss*

■ Next, appellants argue that the trial court erred in refusing to dismiss the charges against them, after their pleas of guilty, because of allegedly outrageous government misconduct. We reject appellants' claims.

The trial court observed that it is difficult to see how allegedly outrageous conduct *after* a plea of guilty would logically justify allowing appellants to

withdraw their pleas, or justify dismissal of the charges against them. While irresponsible or overzealous conduct by government agents is not to be condoned, in the case of challenged conduct which occurred only *after* a plea of guilty and neither coerced nor induced that plea, it is not immediately apparent how there could have been prejudice to a defendant which would justify withdrawal of the plea or dismissal. (See *People v. Hayes* (1988) 200 Cal.App.3d 400, 412 [246 Cal.Rptr. 750] ["A finding of prejudice is necessary before a remedy is applied or a sanction is imposed" for government misconduct.]; *People v. Tribble* (1987) 191 Cal.App.3d 1108, 1119 [236 Cal.Rptr. 733] [rejecting claim that dismissal should have been granted for outrageous government misconduct because "defendant has demonstrated no prejudice of any kind . . . ."].) We need not decide here whether government conduct which was actually outrageous would justify such relief, because the allegedly outrageous conduct here falls far short of the required standard.

The two cases appellants rely on illustrate the necessary level of outrageous government conduct. In *Barber v. Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818], a government agent in an undercover capacity attended meetings between defendants and their counsel and communicated relevant information to his superiors, thus interfering with the right to counsel. In *Boulas v. Superior Court* (1986) 188 Cal.App.3d 422 [233 Cal.Rptr. 487], government agents secretly offered leniency to a defendant if he would discharge his attorney and hire another one acceptable to the government.

Here, by contrast, the allegedly outrageous government misconduct consists of overzealous action by a police officer who (in violation of Pen. Code, § 166, subd. 8) (1) improperly wrote a letter directly to a trial judge urging that appellants receive a severe sentence; (2) arguably exaggerated the importance of the case and the transgressions of appellants in communications to the court, the probation department, and members of the press; and (3) allegedly engaged in "harassment" of appellants by continuing to keep them, their associates, and activities under surveillance after they entered their pleas. ■ The last two matters do not appear to constitute government misconduct at all, as that term is used in the relevant sense. ■ As for the letter sent directly to the initial sentencing judge, we conclude as the trial court did that, while such action was "not proper," it fails to constitute outrageous government conduct justifying relief in this context.

■ Both applicable law and rules of court direct that materials relevant to the aggravation or mitigation of punishment should be presented to the court *through the probation department,* not directly to the judge (except the

statements of victims, which may be presented in open court but are not involved in this case). (See Pen. Code, § 1203 [mandating preparation of a probation report for consideration of the sentencing judge]; Pen. Code, § 1204 [providing, in relevant part: "No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section."]; Pen. Code, § 166 ["Every person guilty of any contempt of Court, of either of the following kinds, is guilty of a misdemeanor: [¶] . . . [¶] 8. Presenting to any Court having power to pass sentence upon any prisoner under conviction, or to any member of such Court, any affidavit or testimony or representation of any kind, verbal or written, in aggravation or mitigation of the punishment to be imposed upon such prisoner, except as provided in this Code."]; Cal. Rules of Court, rule 419 [mandating that presentence report "shall include . . . : [¶] . . . [¶] (7) Collateral information, including written statements from: (i) official sources such as defense and prosecuting attorneys, police . . . ; and (ii) interested persons, including family members and others who have written letters concerning the defendant"]; Cal. Rules of Court, rule 437 [specifying requirements for statements in aggravation and mitigation].)

■ In cases where any person intentionally attempts to circumvent the statutory sentencing scheme by presenting arguments to the sentencing judge on an ex parte basis, the Legislature has provided an effective remedy in the form of misdemeanor liability for contempt of court. (Pen. Code, § 166, subd. 8.)

However, we also recognize that it is not uncommon for written communications from members of the public (many of whom are ignorant of the law), expressing all types of views concerning sentencing, to be delivered ex parte to the sentencing judge. In such instances, the sentencing judge on opening his mail is necessarily exposed to a proscribed communication whose nature he will not recognize until he in fact reads it.

The Supreme Court in considering this question has stated as follows: "Trial judges often read newspapers, hear radio reports, or even overhear conversations or receive unwelcome letters containing statements relative to a case they are hearing; but if they are qualified for their office, they disregard all such statements insofar as evidentiary consideration is concerned." (*People* v. *Lichens* (1963) 59 Cal.2d 587, 588 [30 Cal.Rptr. 468, 381 P.2d 204].)

The subject of the ex parte receipt by a court of sentencing information adverse to a defendant was also reviewed by our Supreme Court in *In re Calhoun* (1976) 17 Cal.3d 75 [130 Cal.Rptr. 139, 549 P.2d 1235], where a

prosecutor communicated by letter directly with a trial court urging the imposition of consecutive sentences on a defendant under Penal Code section 669. *Calhoun* without reference to *Lichens* recognized the ethical impropriety of such an attorney's communication and said: "Under [Penal Code] sections 1203 and 1204, the sentencing judge may receive information upon which to base his decision in either (1) a probation report . . . , or (2) a hearing in open court on aggravating, or mitigating circumstances. Section 1204 prohibits receipt of information from other sources. [¶] . . . [¶] Although the full adversary safeguards of trial need not apply in the sentencing procedure [citation], both state and federal decisions have recognized the defendant's right to be present with counsel at sentencing [citations], *and to compel disclosure of statements used against him in probation and parole proceedings* [citations]. [¶] Such decisions cast doubt on the constitutionality of the trial court's receipt of sentencing information adverse to the defendant *without affording him an opportunity to respond. . . .* If a judge may receive information outside the record, there seems little point in ensuring a *properly adversary procedure* at sentencing." (*Id.* at pp. 83-84, italics added.)

Thus in both the *Lichens* and *Calhoun* cases, our Supreme Court has implicitly recognized that sentencing judges will sometimes receive communications relative to a sentencing outside of the statutorily prescribed procedures. The sentencing court then may either disregard the communications, as sanctioned by *Lichens,* or give the parties an opportunity to respond if they wish, under *Calhoun,* before the trial court considers the communication. We have every confidence that trial judges will be able to disregard improper communications and will consider only relevant matters at sentencing, within the context of the requirements of due process and a proper adversary procedure in which all parties will have notice of any communication the court is inclined to consider.[1] Such ex parte communications are to be discouraged, and courts may impose the contempt provisions of Penal Code section 166, subdivision 8, for such communication in appropriate cases.

However, if such a communication is received by the judge, he should announce on the record its receipt to all parties prior to sentencing. If he intends to wholly disregard such communication, he should so state on the record. If he intends in any way to consider such communciation in imposing sentence (either by way of supplemental report of the probation officer

---

[1] See Penal Code section 1203, subdivision (b) ("The [probation] report shall be made available to the court and the prosecuting and defense attorneys . . ." prior to sentencing.); and California Rules of Court, rule 437 ("Statements in aggravation and mitigation . . . shall be filed and served . . . prior to the time set for sentencing . . . ."). See also *In re Calhoun, supra,* 17 Cal.3d at page 84.

on consideration of its contents, or otherwise), he may not do so unless he affords the defendant, and in cases of exculpatory content the prosecution, the reasonable opportunity to respond to such communication. "[W]e reject the view that [Penal Code] section 669 authorizes receipt by the judge of such ex parte communications *without affording the defendant an opportunity to answer.*" (*In re Calhoun, supra,* 17 Cal.3d at p. 85.)

■ On the facts of this case, there was no violation of due process requiring reversal. The record here does not disclose whether any contempt proceedings, which the record might justify, were instituted against Officer Torres for his ex parte communication with the court. Punishment for such contempt, however, is not per se grounds for reversal for "outrageous government conduct."

The existence of the letter was disclosed to appellants and their counsel, and they were invited to respond; they sought the disqualification of the sentencing judge, which (perhaps in an excess of caution) was granted; and they do not appear to have been prejudiced by unsubstantiated allegations in the letter, since they were given an opportunity to refute them prior to sentencing. We do not find that the letter constitutes "conduct on the part of the authorities [that] is so outrageous as to interfere with an accused's right of due process of law, . . ." or "flagrant and shocking misconduct by overzealous government officials . . . ." such that withdrawal of the pleas and dismissal would be warranted. (*Boulas* v. *Superior Court, supra,* 188 Cal.App.3d at p. 429.) We affirm the trial court's denial of the motion to dismiss.

### C. *Evidentiary Hearing*

■ Appellants next contend that the trial court erred in denying them an evidentiary hearing on their motion to dismiss. We conclude that this contention, in the specific circumstances of this case, also lacks merit.

First, it is not clear that this issue was preserved for appeal. At the August 21, 1987, hearing on the motions to withdraw the pleas and to dismiss for government misconduct, the parties appear to have submitted the matter on the briefs; and there is no clear indication in the record that the appellants sought to present any evidence at the hearing. Certainly it does not appear from the record before us that appellants ever called any witnesses, that the court denied them an opportunity to testify, or that appellants presented any offers of proof.

However, even if the record were possibly ambiguous and we assumed, arguendo, that this point was properly raised below, the contentions which

appellants wish to support with evidence, as detailed in an affidavit of counsel, would not constitute prejudicial outrageous government misconduct justifying relief, as we have already concluded in our discussion above. Therefore, error, if any, was harmless; and we find no prejudicial error regarding the claimed denial of an evidentiary hearing.

### D. *Cross-examination of the Probation Officer*

■ Finally, appellants contend that they should have been allowed to cross-examine the probation officer at the sentencing hearing. The trial court sustained the People's objection to such a procedure, opining that the trial court could see no reason to allow the probation officer to be examined concerning her sentencing recommendations to the court; and the court noted that it would be the ultimate decision maker. In fact, the sentences actually imposed were much more lenient than those recommended by the probation officer in her reports.

"[N]either the Sixth Amendment nor the Penal Code requires that [a defendant] be permitted to cross-examine the person who, pursuant to statutory mandate, prepares a probation report." (*People* v. *Smith* (1985) 38 Cal.3d 945, 960-961 [216 Cal.Rptr. 98, 702 P.2d 180].) "Accordingly, the trial judge did not err and [this] argument is without merit." (*Id.* at p. 961.)

### III. Disposition

The judgments are affirmed.

Kline, P. J., and Benson, J., concurred.